John Meyer, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149
john@cottonwoodlaw.org

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MONTANA - BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER; MONTANA RIVERS; and GALLATIN WILDLIFE ASSOCIATION,<br><br>*Plaintiffs,*<br>vs.<br><br>RON EDWARDS, in his official capacity as Manager of the Big Sky Water and Sewer District; and BIG SKY WATER AND SEWER DISTRICT,<br><br>*Defendants.* | Case No. _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

1. Cottonwood Environmental Law Center (Cottonwood), Montana Rivers, and Gallatin Wildlife Association (collectively; Community Groups) bring this action against the Big Sky Water and Sewer District Water Resources Recovery Facility (WRRF) for their ongoing violations of the Clean Water Act (CWA) by discharging pollutants into the West Fork of the Gallatin River without a National Pollutant Discharge Elimination System (NPDES) permit in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a). The CWA requires that the Montana Department of Environmental Quality issue permits before it allows any discharge of pollutants into Montana's waterways.

2. The Big Sky Water and Sewer District manages the Water Resources Recovery Facility, a treatment center and set of holding ponds in Big Sky, Montana, adjacent to the West Fork of the Gallatin River (West Fork). Wastewater from a pipe near a holding pond is discharging directly into the West Fork of the Gallatin River. The wastewater is contaminated with pharmaceuticals, chloride, nitrate, calcium, fluoride, iron, lithium, magnesium, potassium, sodium and sulfate and other pollutants.

3. The discharge exposes the West Fork of the Gallatin River, the Gallatin River, and all water bodies to which the Gallatin River is a tributary to pollutants. The West Fork is already listed as an impaired water body by MTDEQ, and further

unregulated discharge exacerbates the problem and does not comply with the applicable Water Quality Improvement Plan. The unlawful discharge harms plaintiffs' members' recreational, scientific and aesthetic interests in the water quality, aquatic species, and the health of the Gallatin River watershed. Plaintiffs' members do not want to recreate in treated waste water.

4. Plaintiffs seek declaratory and injunctive relief prohibiting Defendant from discharging pollutants without obtaining and complying with an NPDES permit, as well as an award of litigation costs, Cottonwood's attorney fees, and expert witness fees.

## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction over the claims for violations of the CWA set forth in this Complaint pursuant to the CWA, 33 U.S.C. § 1365(a)(2). This cause of action arises under 33 U.S.C § 1365 (f)(1) as a violation of 33 U.S.C. § 1311(a).

6. Defendant is in violation of the CWA by discharging pollutants without a NPDES permit. The requested relief is proper under the CWA, 33 U.S.C 1365(a).

7. Venue in the United States District Court for the District of Montana is proper under 33 U.S.C. § 1365 (c) because defendant WRRF is located at 561 Little Coyote Road, Big Sky, Montana, 59716, and is thus within this district.

8. As required by the CWA, 33 U.S.C. § 1365(b)(1)(A), Cottonwood provided Defendant with notice of its intent to sue more than sixty (60) days before filing this Complaint. Cottonwood also notified the Administrator of the United States Environmental Protection Agency (EPA), and the Montana DEQ (MTDEQ) of its intent to sue. Each recipient received notice on April 27th, 2020. Neither EPA nor DEQ have commenced any enforcement action to correct Defendant's CWA violation.

## PARTIES

9. Plaintiff Cottonwood Environmental Law Center (Cottonwood) is a conservation organization with members throughout the West dedicated to protecting the people, forests, water, and wildlife in the American West. Cottonwood's goal is to enforce environmental regulations on behalf of its members. Cottonwood's members use the Gallatin River watershed for fishing, swimming, rafting, photography, guiding, and consumption. Cottonwood's members are concerned about water quality of the Gallatin River watershed and are adversely affected by unlawfully discharged pollution into this waterbody.

10. Pollution discharges from the WRRF degrades water quality and, thereby, harms fish and other aquatic life and diminish the aesthetic quality of the watershed.

11. Community Groups and their staff, members, and supporters have suffered and continue to suffer injury-in-fact on account of WRRF's CWA violations as alleged herein. The injury-in-fact is traceable to WRRF's conduct and would be redressed by the relief Plaintiffs seek.

12. Community groups' members use and enjoy the West Fork for recreational purposes on an ongoing basis. Members recreate in the Gallatin River watershed and fish in the West Fork. Illegal discharge of wastewater harms their recreational, aesthetic and conservation interests by degrading water quality. Members are concerned the discharge will impact their use of the West Fork, and have refrained from recreational activities on the West Fork and Gallatin Rivers upon learning about wastewater flowing into the river. Members float on the Gallatin River and are concerned about swimming in pharmaceutical wastewater.

13. Community Groups also suffer injury-in-fact because they have devoted time, energy, and money to protecting water quality and fisheries, and monitoring the West Fork. Over the last five months, Community Groups closely monitored discharges from the WRRF site, and have sent staff and contractors to visit the area, observe and document illegal discharges, and evaluate water quality impacts.

14. Defendant RON EDWARDS is sued in his official capacity as Manager of Big Sky Water and Sewer District Water Resources Recovery Facility. As Manager, Mr. Edwards is in the highest position at the facility, where he has the

authority and responsibility to oversee WRRF's compliance with laws and regulations, including the CWA.

## LEGAL BACKGROUND

15. "Congress enacted the CWA in 1948 with the goal of *eliminating* the discharge of pollutants in order to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *N. Cheyenne Tribe v. Mont. Dept. of Envtl. Quality*, 2010 MT 302, ¶ 21, 356 Mont. 296, 302, 234 P.3d 51, 55 (2010) (emphasis in original) (citing 33 U.S.C. §1251(a)). "Congress developed the NPDES [National Pollution Discharge Elimination System] permit system to achieve this goal." *Id*; (citing 33 U.S.C. §§1342 and 1311).

16. The CWA requires a NPDES permit for each and every point source discharge into a navigable waterway. 33 U.S.C. § 1342. "[T]he discharge of any pollutant by any person shall be unlawful" unless the discharge is made pursuant to and is authorized by a NPDES permit. 33 U.S.C. §§ 1311(a) and 1342(a). "The primary means for enforcing [water quality] limitations and standards is the NPDES [program]." *Arkansas v. Oklahoma*, 503 U.S. 91, 101-02 (1992).

17. The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

18. The CWA defines "point source" as a "discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

19. The CWA defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

20. The CWA defines "person" as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

21. The Environmental Protection Agency ("EPA") administers NPDES permits unless a state has enacted its own enforcement program, in which case EPA's Administrator ("Administrator") must have approved the state's program. 33 U.S.C. § 1342(a). Montana has elected to administer its own permit program – the MPDES program – which is under the control of the DEQ. Mont. Code Ann. §§ 75-5-402, 75-5-211; A.R.M. 17.30.101, 17.30.1201. Once delegated to a state, the state "stands in the shoes" of EPA, and states are obligated to implement all of the CWA's requirements for the NPDES program. *N. Cheyenne*, ¶ 37.

22. The citizen suit provision of the CWA authorizes "any citizen" to "commence a civil action on his own behalf" in federal district court against any person who is alleged to be in violation of "an effluent standard or limitation" of the Act. 33 U.S.C. § 1365(a).

## FACTUAL BACKGROUND

**The West Fork of the Gallatin River**

23. The West Fork of the Gallatin River is a navigable water located in south-central Montana and is a tributary to the Gallatin River.

24. The West Fork flows generally west to east, from its headwaters at the confluence of the Middle and North Forks of the Gallatin River in the Madison Mountain Range to its mouth at the Gallatin River just north of Big Sky Canyon Village. Along the way, the West Fork flows through the community of Big Sky, Montana and numerous neighboring developments.

25. The West Fork provides important habitat to fish and wildlife. The West Fork and Gallatin River watershed is a heavily used area for recreation.

**The Water Resources Recovery Facility**

26. The Water Resources Recovery Facility is located in Big Sky, Montana. It is a wastewater treatment plant for the community of Big Sky, Montana. It contains multiple holding ponds adjacent to the West Fork.

27. There is visible discharge flowing from the treatment pond retaining wall into the West Fork. The point of discharge from WRRF is located on the exterior of the retaining wall of the facility's eastern ponds.

**Unpermitted Pollution Discharge from the WRRF Holding Pond:**

28. On March 5, 2020, Community Groups collected samples from the West Fork immediately above and below the holding ponds. The samples indicate elevated levels of chloride, nitrate, calcium, fluoride, iron, lithium, magnesium, potassium, sodium and sulfate below the ponds, indicating pollutants increase due to discharge from the ponds. Additional lab results were collected on May 4, 2020 from water flowing directly out of the leak in the holding pond retaining wall which contain the above-named pollutants.

29. Community Groups have observed, photographed and recorded discharge into the West Fork on March 5, May 4, and June 12, 2020. Community Groups believe unlawful discharge is occurring every day of the year.

30. The discharges of pollutants from WRRF described herein were made, and will continue to be made from a pipe connected to the holding pond, which is a discernible, confined, and/or discrete conveyances.

31. Defendants have never obtained an NPDES permit for the discharges described herein. This violates the CWA.

32. Defendants' violations of the CWA are serious. They degrade the quality of the West Fork and harm the people, fish, and wildlife that rely on it.

33. Defendants received plaintiff's 60 day notice of violation on April 27th, 2020, confirmed by return receipt, specifying the nature of the violation and what action was needed to comply with the permit requirements of the CWA . Defendant has not responded to the notice.

## CLAIM FOR RELIEF

34. Community Groups reallege and incorporate by reference all preceding paragraphs.

35. Defendant RON EDWARDS has violated and continues to violate section 301 of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants, including chloride, nitrate, calcium, fluoride, iron, lithium, magnesium, potassium, sodium and sulfate, and other pollutants from the wastewater holding ponds at the WRRF into the West Fork of the Gallatin River without a NPDES permit. These violations are violations of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f).

36. The West Fork is a navigable water subject to CWA jurisdiction.

37. Defendant discharged said pollutants from a pipe leak connected to the facility holding pond retaining wall—which constitutes a point source—via a direct surface water connection to the West Fork in 2020 on March 5, May 4, and

June 12. Upon information and belief, these discharges also occurred prior to March 5 and on every day since, up to and including the present. These direct surface water discharges are ongoing and will continue until the leak is permanently repaired or the holding pond no longer contains wastewater.

38.     Defendants did not have, and do not currently have, an NPDES permit authorizing any of these past and ongoing pollution discharges.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.     Declare, hold, and adjudge that Defendant has violated and continues to violate Section 301 of the Clean Water Act by discharging pollutants from a leak in their wastewater holding pond to navigable waters without an NPDES permit.

B.     Enjoin Defendant from further discharging pollutants to the West Fork and any other water of the United States except as expressly authorized by the CWA and the limitations and conditions of an applicable NPDES Permit.

C.     Order interim pollution monitoring and mitigation measures until Defendant complies with the CWA.

D.     Order Defendant to take actions to remediate environmental harm caused by its unlawful discharges.

E.  Award Plaintiff its reasonable litigation costs and expenses, including attorney and expert fees, incurred in bringing this action.

F.  Award such other relief as the Court may deem just and proper.

DATED this 10th day of July, 2020.

Respectfully Submitted,

/s/ John Meyer
JOHN MEYER, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149
john@cottonwoodlaw.org

*Counsel for Plaintiffs*