Case 2:20-cv-00028-BMM   Document 85   Filed 11/12/21   Page 1 of 12

John Meyer, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149
john@cottonwoodlaw.org

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA - BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER; MONTANA RIVERS; and GALLATIN WILDLIFE ASSOCIATION,<br><br>*Plaintiffs,*<br>vs.<br><br>RON EDWARDS, in his official capacity as Manager of the Big Sky Water and Sewer District; and BIG SKY WATER AND SEWER DISTRICT,<br><br>*Defendants.* | Case No. 2:20-cv-00028-BMM<br><br>PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## TABLE OF CONTENTS

INTRODUCTION………………………………………………………....……………..1

ARGUMENT……………………………………………………………..……………...1

    I.       Defendants are Violating the Clean Water Act by Discharging Treated Sewage Out of a Point Source Pipe…………………………………………1

    II.      Defendants are Legally Responsible for Controlling Irrigation on the Meadow Village Golf Course…………………………………………….2

    III.     The Court has Jurisdiction to Determine Civil Penalties……………….5

    IV.     Ron Edwards is a Proper Defendant…………………………………...6

CONCLUSION……………………………………………………………………..8

# TABLE OF AUTHORITIES

*City of Milwaukee v. Illinois and Michigan*,
    451 U.S. 304 (1981)……………………………………….……………..2

*Cty. of Maui, Hawaii v. Haw. Wildlife Fund*,
    140 S. Ct. 1462 (2020)……………….……..…………………………...1

*Gallatin Wildlife Ass. v. U.S. Forest Serv.*,
    2:15-cv-00027-BMM…………………………………………………….6

*Haw. Wildlife Fund, et al. v. Cty. of Maui*,
    2021 WL 3160428 (D. Haw. July 26, 2021)……………….…………...2

*Idaho Conservation League v. Atlanta Gold Corp.*,
    879 F. Supp. 2d 1148 (D. Id. 2012)…………………………………....5

*Kentucky v. Graham*,
    473 U.S. 159 (1985)…………………………………………..………..7

*Natural Resources Defense Council v. McCarthy*,
    2016 WL 6520170 (N.D. Cal. 2016)……………………………………..7

*Protect our Water v. Flowers*,
    377 F. Supp. 2d 844 (E.D. Cal. 2004)…………………………………7

*Puget Soundkeeper All. v. Cruise Terminals of America, LLC*,
    216 F.Supp.3d 1198 (W.D. Wash. 2015)…………………..…....………2

*Sierra Club v. Union Oil Co. of California*,
    813 F.2d 1480 (1987)……………………………………………....…..2

*United States v. Walker Irrigation District*,
    986 F.3d 1197 (9th Cir. 2021)…………..…………………………..6

# INTRODUCTION

The Court should deny Defendant Ron Edwards and Big Sky Water and Sewer District's (collectively "District") motion for summary judgment because they are violating the Clean Water Act by discharging treated sewage out of a pipe into the West Fork of the Gallatin River without a permit. The Court should again reject the Defendants' contention that they do not have legal control over irrigation practices on the golf course because the District entered into an agreement assigning it control of the irrigation practices. The Court has jurisdiction to levy civil penalties for the Clean Water Act violations because of the Act's explicit statutory language and the relief requested in Plaintiffs' complaint. Ron Edwards, in his official capacity as Manager of the Water and Sewer District, is an appropriately named Defendant because he ignored directives from the Montana DEQ regarding how irrigation practices on the golf course should be managed and misrepresented the District's monitoring practices.

# ARGUMENT

### I. DEFENDANTS ARE VIOLATING THE CLEAN WATER ACT BY DISCHARGING TREATED SEWAGE OUT OF A POINT SOURCE PIPE.

The District is violating the Clean Water Act by discharging treated sewage from its underdrain pipe into the West Fork of the Gallatin River without a permit. *Cty. of Maui v. Hawaii Wildlife Fund,* 140 S. Ct. 1462, 1476 (2020). The District claims that "because the underdrain pipe does not 'add' any pollutants to the West Fork, no

1

discharge permit is required for it." Brf. at 19. Defendants' argument lacks factual support. Fed. R. Civ. P. 11(b)(3).

Plaintiffs placed dyed in the District's treated sewage holding ponds and found that it was discharged from the underdrain pipe into the West Fork of the Gallatin. Doc. 76-2. Defendants' expert agreed in deposition testimony that the underdrain pipe is discharging treated sewage into the West Fork of the Gallatin River. Doc. 76-1 at 30:9-25.[1]

The amount of treated sewage the District is discharging from its point source pipe is irrelevant to whether a permit is needed. *E.g.*, *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 318 (1981) ("Every point source discharge is prohibited unless covered by a permit.") There is no "de minimis" exception. *Haw. Wildlife Fund, et al. v. Cty. of Maui*, 2021 WL 3160428 (D. Haw. July 26, 2021); *Sierra Club v. Union Oil Co. of California*, 813 F.2d 1480, 1490-91(1987) (vacated on other grounds by 485 U.S. 931 (1988)); *Puget Soundkeeper All. v. Cruise Terminals of America, LLC*, 216 F.Supp.3d 1198, 1205 (W.D. Wash. 2015). Defendants have violated the Clean Water Act by discharging treated sewage out of a pipe into the West Fork of the Gallatin River without a NPDES permit.

## II. DEFENDANTS ARE LEGALLY RESPONSIBLE FOR CONTROLLING IRRIGATION ON THE MEADOW VILLAGE GOLF COURSE.

---

[1] The underdrain pipe is a point source. 33 U.S.C. §1362(14).

The District argues that it is not responsible for the Clean Water Act violations related to the over irrigation of the golf course because it does not own, operate, or control the point source drains located on the Meadow Village golf course. Brf. at 7. The District has already made the same basic argument and the Court has already rejected it. Compare Doc. 26 at 15 ("the District does not own or operate the components of the irrigation system that discharge wastewater") with Doc. 74 at 13 ("the District does not own, operate, or control the alleged point sources on the Meadow Village golf course"). As a preliminary matter, the Defendants do not contest that the golf course drains are point sources that are discharging nitrogen pollution into the West Fork. The only issue is whether the Defendants are responsible for the Clean Water Act violations.

> According to DEQ Circular 7:
>
> When the irrigation site is not owned by the treatment facility, a 20-year lease or similar assurance must be negotiated in order to ensure control of irrigated land.

Doc. 73-4 at 15. Plaintiffs previously provided the Court with the lease agreement that the District entered into with Boyne, which states:

> Boyne agrees that as long as the District complies with the terms of this Agreement that, subject to the uptake capacity of the subject real property, the District may dispose of any amount of treated wastewater it deems necessary on the subject real property[.]
>
> The District after consulting with Boyne, shall devise a disposal schedule and determine the amount of wastewater to be disposed of each day.

3

> [T]he District will determine and control the schedule for disposal of treated wastewater through spray irrigation or snow-making on the subject real property.
>
> The parties agree that the District shall have the right to modify the irrigation system as it deems necessary to satisfy its wastewater disposal needs.

Doc. 22-4 at 4-5. The District's summary judgment brief never addressed DEQ Circular 7 or the Agreement.[2]

The District cites 33 U.S.C. § 1318(a) for the proposition that the "owner or operator of any point source" is required "to establish and maintain records, install and maintain monitoring equipment, and sample effluents." Brf. at 8. The District was required to do those things pursuant to its Agreement with Boyne:

> The District shall install and maintain such instruments and equipment as determined by the District for monitoring and measuring the disposal of wastewater including but not limited to lysimeters, monitoring wells, and flow meters. The District shall also be responsible for all tasks, such as analyzing samples and collecting data, as required for monitoring and measuring the disposal of wastewater on the subject real property.

Doc. 22-4 at 4-5. Defendant Ron Edwards has known for over a decade that the District is responsible for ensuring the golf course is not over-irrigated. In March 2011, the DEQ told Ron Edwards:

> Ultimately, the District needs to control the effluent volumes used and the application approach to protect itself against further violations.

---

[2] The issue of whether the District is legally responsible for controlling irrigation on the golf course is separate from whether it is actually controlling irrigation. The District's failure to control irrigation practices has led to the functional equivalent of a point source discharge. Doc. 77 at 18 (Plaintiffs' Summary Judgment Brief).

4

Doc. 26-4 at 3.

In August 2011, the DEQ told Ron Edwards that the District needs to monitor and sample the Chapel Springs drain on the Golf Course:

> There was a small spring or stream channel that surfaces just behind the Chapel under a large cottonwood via a culvert into a small ditch. It appears to empty into the pond north of the District office building. If monitoring of that stream segment is taking place it would be useful information to gather. If not, it may be a good location to perform some sampling to determine water quality characteristics.

Exhibit 1. A 2020 Technical Memorandum prepared by an independent expert referred to the Chapel Springs drain as a "known point source." Doc. 48-9 at 36. Experts from both sides found flouroscein dye discharged from the Chapel Springs drain. Doc. 76-5 at 25.

The Court has already determined that "Big Sky District solely controls the quality, quantity, and timing of effluent used in irrigation in compliance with the [Nutrient Management Plan]." Doc. 35 at 5. The Court should reject the Defendants' regurgitated argument to the contrary.

    III.   <u>THE COURT HAS JURISDICTION TO DETERMINE CIVIL PENALTIES.</u>

The District claims that Plaintiffs may not seek civil penalties because they were not requested in the complaint. Brf. at 20-21. The CWA provides that district courts in citizen suits "shall have jurisdiction ... to apply any appropriate civil penalties under Section 1319(d) of this title." 33 U.S.C. §1365(a). According to Section 1319(d), "[a]ny person who violates [various sections of the Clean Water Act] shall be subject

5

to a civil penalty not to exceed $25,000 per day for each violation."); *see also Idaho Conservation League v. Atlanta Gold Corp.*, 879 F. Supp. 2d 1148, 1165 (D. Id. 2012) ("penalties are mandatory if a Plaintiff proves that the defendant discharged pollutants.") The Court has jurisdiction to determine civil penalties.

Defendants did not cite any controlling Ninth Circuit precedent on its waiver argument. Brf at 20-22. Plaintiffs' complaint requests that the Court "[a]ward such other relief as the Court may deem just and proper." Doc. 8 at 12. The Ninth Circuit recently held that a complaint was "broad enough to encompass the remedies" sought, "and, even if that were not the case, '[t]he liberal policies reflected in Rules 15(a) and 15(b) permit the demand to be amended either before or during trial.'" *United States v. Walker Irrigation District*, 986 F.3d 1197, 1205-06 (9th Cir. 2021) (citation omitted). "Under Rule 54(c), moreover, 'the district court may grant any relief to which the evidence shows a party is entitled, even though that party has failed to request the appropriate remedy or remedies in his pleading.'" *Id.* at 1206.

Defendants argue that they would be prejudiced if the Court were to levy civil penalties for their Clean Water Act violations because discovery has closed. Brf. at 22. This Court has previously allowed limited discovery after granting a motion for summary judgment. *Gallatin Wildlife Ass. v. U.S. Forest Serv.*, 2:15-cv-00027-BMM (Doc. 168). The Court can permit discovery at the time it issues a briefing schedule for remedies.

    IV.    <u>RON EDWARDS IS A PROPER DEFENDANT.</u>

6

Ron Edwards is a properly named Defendant in his official capacity as the Manager of the Big Sky Water and Sewer District. The Clean Water Act authorizes citizen suits against *"any person* ... who is alleged to be in violation of ... an effluent standard or limitation under this chapter." 33 U.S.C. §1365(a)(1) (emphasis added). The Supreme Court has held that a "judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents[.]" *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). District Courts within the Ninth Circuit have adjudicated official capacity Clean Water Act cases. *See e.g.*, *Natural Resources Defense Council v. McCarthy*, 2016 WL 6520170 (N.D. Cal. 2016); *Protect our Water v. Flowers*, 377 F. Supp. 2d 844 (E.D. Cal. 2004). None of the cases cited by Defendants involved Clean Water Act claims. Brf. at 23-24.

Ron Edwards is a properly named defendant in his "official capacity" because his mismanagement of operations at the water treatment plant is the source of the Clean Water Act violations. 33 U.S.C. §1365(a)(1). Edwards, as Manager of the Big Sky Water and Sewer District, "supervise[s] the operation of the District's wastewater treatment plant" and "work[s] with the Montana Department of Environmental Quality on matters concerning the District and its operations." Doc. 73-1 at 3, ¶ 3.

The DEQ specifically told Edwards the District needed to control the volume of treated sewage that was applied to the golf course. Doc. 26-4 at 3. Edwards, as Manager of the District, ignored the admonishment and allowed the golf course to irrigate with as much treated sewage as it wanted even though it did not know the

7

nitrogen concentrations or calculate the agronomic uptake rate. Doc. 48-1 at 21:2-17. Plaintiffs' opening summary judgment brief explained how Edwards, during the District's 30(b)(6) deposition, falsely claimed that the lysimeters were tested when they were not. Doc. 77 at 4-5. The DEQ specifically told Edwards the District needed to monitor the Chapel Drain on the golf course. Exhibit 1. Dye testing showed treated sewage is being discharged from the Chapel drain. Doc. 76-5 at 25. The Defendants' expert reported the Nitrate concentration of the discharge was 5.6 mg/l—more than 20 times the concentration in the receiving water. Doc. 48-2 at 6; Doc 8 at 4.

Ron Edwards ignored the DEQ's direction to control the volume of treated sewage that was used to irrigate the golf course, ignored DEQ's direction to monitor the Chapel drain, and misrepresented the District's monitoring efforts. Doc. 26-4 at 3; Exhibit 1; Doc. 77 at 4-5. Ron Edwards, in his official capacity as Manager of the Big Sky Water and Sewer District, is a proper Defendant. 33 U.S.C. §1365(a)(1).

## CONCLUSION

The Court should deny Defendants' motion for summary judgment, grant Plaintiffs', and order a briefing schedule for civil penalties and other remedial relief.

Respectfully submitted this 12th day of November, 2012.

/s/ John Meyer
JOHN MEYER

*Attorney for Plaintiffs*

8

## CERTIFICATE OF SERVICE

I certify that on November 12, 2021, I served the foregoing brief via CM/ECF on counsel for defendants listed below:

Jacqueline R. Papez
Cynthia D. Brooks
DONEY CROWLEY P.C.
P.O. Box 1185
50 South Last Chance Gulch, 3rd Floor
Helena, MT 59601
Telephone: (406) 443-2211
Facsimile: (406) 449-8443
jpapez@doneylaw.com
cbrooks@doneylaw.com

Jonathan W. Rauchway (Admitted Pro Hac Vice)
Mave Gasaway (Admitted Pro Hac Vice)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Facsimile: (303) 893-1379
jon.rauchway@dgslaw.com
Mave.Gasaway@dgslaw.com

*Counsel for Defendants*

/s/ John Meyer
JOHN MEYER

*Attorney for Plaintiffs*