John Meyer, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149
john@cottonwoodlaw.org

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MONTANA - BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, et al., <br><br> *Plaintiffs,* <br><br> vs. <br><br> RON EDWARDS, in his official capacity as Manager of the Big Sky Water and Sewer District; and BIG SKY WATER AND SEWER DISTRICT, <br><br> *Defendants.* | Case No. 2:20-cv-00028-BMM <br><br> PLAINTIFFS' STATEMENT OF DISPUTED FACTS |

Pursuant to Local Rule 56.1(a), Plaintiffs submit this Statement of Disputed Facts in response to Defendants Ron Edwards and Big Sky Water and Sewer District's Undisputed Statement of Facts.

1. The District is a county water and sewer district under Montana Law that encompasses approximately 6,285 acres in Madison and Gallatin Counties. Third Declaration of Ron Edwards, attached as Exhibit 1 ("Third Edwards Decl.") ¶ 2; *see also* Doc. 26-1 ("First Edwards Decl.") ¶ 2. The District includes a resort community at Big Sky, Montana, consisting of single-family residences, condominiums and townhouses, hotels, restaurants, and commercial centers. *Id.*

    a. Undisputed

2. The District operates wastewater and sewer systems for this resort community. Third Edwards Decl. ¶ 2. The District operates a wastewater treatment plant, the Water Resources Recovery Facility ("WRRF"). First Edwards Decl. ¶ 4.

    a. Undisputed

3. The original wastewater treatment facility at Big Sky was constructed in the early 1970s and was modified in the early 1980s. The current WRRF was constructed in two phases. The District constructed a tertiary filter plant in 1996 and a new sequencing batch reactor treatment plant in 2004. Third Edwards Decl. ¶ 4.

    a. Undisputed

4. Currently, the WRRF treatment process includes four basic steps: (1) removal of debris and grit; (2) treatment within a sequencing batch reactor; (3)

filtration; and (4) disinfection. Doc. 53-2, Second Declaration of Mark Cunnane ("Second Cunnane Decl.") ¶ 5. The WRRF headworks building consists of two influent channels with helical basket screens to remove solid material from the waste stream, a vortex grit removal system, a two-basin sequencing batch reactor that provides secondary treatment with oxidizing bacteria, a tertiary treatment system, and a disinfection system. Solids are removed from the sequencing batch reactor, treated in two aerobic digesters, and then composted with wood chips. The compost is used by the local community for gardening and landscaping. The tertiary treatment process consists of coagulation, flocculation, sedimentation, and filtration using a multi-media filter. Disinfection is accomplished by chlorination. First Edwards Decl. ¶ 7.

    a. Undisputed

5.     The effluent produced by the WRRF treatment process meets Class A standards under DEQ Circular 2, which are the standards that apply to irrigation, including irrigation of golf courses. Third Edwards Decl. ¶ 4.

    **a. Disputed.**
    **b. The 2020 Total Coliform counts exceeded the Class A requirements for irrigation found in DEQ Circular 2 (Doc. 26-5 at 12)**
        **i. *E.g.*, 29-3 at 45.**

6.     The treated effluent is stored in lined ponds at the site. Collectively, the ponds span nearly 18 acres. The storage ponds are filled during the winter months and then drained throughout the irrigation season, which runs from approximately

late May through early October each year depending on weather conditions in a given year. Third Edwards Decl. ¶¶ 4, 9.

   a. **Disputed.**
   b. **The treated effluent is not stored in lined ponds. Experts for both sides have both determined treated sewage is being discharged from the underdrain pipe below the storage ponds.**
     i. **Doc. 76-1 at 30:9-25.**
     ii. **Doc. 76-2.**

  7. All of the treated effluent from the WRRF is reused for irrigation of nearby golf courses and other nearby properties. Second Cunnane Decl. ¶ 5.
   a. **Disputed.**
   b. **The treated sewage is discharged out of the underdrain pipe.**
     i. **Doc. 76-1 at 30:9-25.**
     ii. **Doc. 76-2.**
   c. **Defendants' expert has admitted that irrigation is contributing to nitrogen loading in the West Fork, meaning not all treated sewage was used for irrigation purposes.**
     i. **Doc. 76-1 at 59:4-11.**

  8. Because the District utilizes all of the effluent from the WRRF for irrigation, the Montana Department of Environmental Quality ("DEQ") has concluded that the District follows a "'zero-liquid discharge' approach," and that the District is "not required to and do[es] not currently hold a [NPDES] discharge permit." *See* DEQ Environmental Assessment, attached as Exhibit 2; Rule 30(b)(6) Deposition of DEQ, Terry Campbell ("DEQ Depo.") 53:21-54:12; 56:23-57:11, excerpts attached as Exhibit 3.

   a. **Disputed.**
   b. **The Montana DEQ would not agree to sign an affidavit prepared by the District stating it "agreed that they had operated in conformance based on the data we reviewed, those kind of affirmations."**

                **i. Doc. 76-6 at 166: 8-9.**

9. The District's wastewater treatment system is designed and operated to avoid the discharge of pollutants to ground and surface waters. *Id.* ¶ 6. The ponds are lined with 60-mil high density polyethylene (HDPE) liners over an engineered and native substrate to prevent infiltration of the treated effluent into the subsurface. Second Cunnane Decl. ¶ 6.

      **a. Disputed.**
      **b. The DEQ determined the existing treatment system "does not consistently allow the District to produce reclaimed effluent of the quality needed." ECF No. 23-1 at 2.**
      **c. In 2020, DEQ stated the District's treatment system is being "pushed past the design capacity."**
            **i. ECF No. 23 at 1.**
      **d. The DEQ has stated the elevated nitrogen levels "pose a surface water risk." ECF No. 23-1 at 4.**

10. DEQ's regulations specify the acceptable amount of allowed leakage from the ponds each year. DEQ Depo. at 74:1-76:11 & Circular DEQ-2 (Ex. 6 to the DEQ Deposition), excerpts of which are attached as Exhibit 4. DEQ has determined that if the District meets the leakage criteria in DEQ's regulations—of no more than 6 inches per year—the District does not need any permit to operate the ponds. DEQ Depo. at 76:5-11.

      **a. Disputed.**
      **b. The 303(d) listing of the West Fork has provided the DEQ with new authority for enforcement actions.**
            **i. Doc. 76-6 at 154: 1-8.**

      **c. The Clean Water Act does not allow any addition ("leakage") of any pollutant from a point source to a Water of the U.S. without a permit.**
          **i. *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 318 (1981)**

11. Plaintiffs claim that the pond liners are leaking treated effluent. Final Report of Plaintiffs' retained expert, Thomas Aley, dated August 19, 2021 ("Aley Report") at 21. Plaintiffs do not explain how or from where any specific leaks in the ponds are occurring. *Id.* at 21-22; Rebuttal Report of Thomas Aley, dated September 9, 2021 ("Aley Rebuttal") at 4. They instead claim diffuse leakage based on an alleged water budget. *Id.* Excerpts of the Aley Report and Aley Rebuttal are attached as Exhibit 5.

      **a. Disputed.**
      **b. Plaintiffs' expert provided likely locations for where the leaks/rips are located.**
          **i. Doc. 76-2.**
      **c. Plaintiffs' expert explained that the underpipe below the holding ponds is discharging treated effluent to the West Fork of the Gallatin.**
          **i. Doc. 76-2.**

12. The District installed an underdrain system beneath the storage ponds as part of a pond improvement project. The underdrain system is an engineered system to prevent the groundwater from floating the pond liners and infiltrating the storage ponds. Second Cunnane Decl. ¶ 7.

      a. **Undisputed.**

13. DEQ approved the underdrain system at the time it approved the District's pond improvement project. DEQ Depo. at 79:1-15.

    a. **Undisputed.**

14. The underdrain system collects groundwater by providing a preferential pathway and discharges it from a pipe in the pond embankment. The groundwater collected by the underdrain system discharges to a wetland adjacent to the West Fork. Second Cunnane Decl. ¶ 7.

    a. **Disputed.**
    b. **Groundwater doesn't discharge anything.**
    c. **The underdrain pipe discharges treated sewage and groundwater, which creates a navigable waterway through a wetland to the West Fork.**
        i. **Doc. 48-13 at 2, ¶8.**

15. The groundwater flowing beneath the District's storage ponds is hydrologically connected to the West Fork Gallatin River. The groundwater and West Fork are not distinct water bodies, as the entire Meadow Village aquifer is tributary to the West Fork. *Id.* ¶ 8.

    a. **Disputed**.
    b. **The nitrogen concentrations in the groundwater and West Fork are distinct**.

16. The underdrain system simply moves water from one part of the water body to another. If the underdrain system did not exist, the groundwater underneath the ponds still would discharge into the West Fork. *Id.* ¶¶ 8-9.

    a. **Disputed.**

      **b. The underdrain system discharges treated sewage out of a pipe into the West Fork of the Gallatin.**

17.    The storage ponds are not directly connected to the underdrain system. There is no element of the facility design that purposely conveys water stored in the ponds to the underdrain. *Id.* ¶ 11.

    **a. Disputed.**

    **b. Plaintiffs' dye tracing tests unequivocally determined the treated sewage from the holding ponds is being discharged from the underdrain pipe.**
        **i. Doc. 76-2.**
    **c. Defendants' expert admitted treated sewage is being discharged from the underdrain pipe.**
        **i. Doc. 76-1 at 30:9-25.**

18.    There are multiple sources of pollution to groundwater upgradient of the storage ponds. Doc. 48-2, Technical Report of Mark Cunnane, Western Groundwater Services, dated May 2021 ("Cunnane Report") at 4. Wells upgradient of the District's operations that were sampled by the Gallatin Local Water Quality District as part of an ongoing groundwater nutrient study show groundwater nitrate concentrations substantially greater than has been measured in groundwater discharged from the underdrain. *Id.*

    a. Undisputed.

19.    Plaintiffs allege that pollutants are discharged through French drains located on the Meadow Village golf course, including through the drain known as the Golf Course Drain. Deposition of Tom Aley ("Aley Depo.") 68:20-69:10; 71:22-72:4,

- 7 -

excerpts attached as Exhibit 6. These French drains were installed by the golf course owner to prevent water from puddling on the course. Third Edwards Decl. ¶ 5.

    a. Undisputed.

20. The District does not own, operate, maintain, or control the Meadow Village golf course, or any French drains, the sprinkler system, or any other infrastructure located on the Meadow Village golf course. Third Edwards Decl. ¶ 6.

    a. **Disputed.**
    b. **The District is legally responsible for controlling irrigation practices on the Meadow Village golf course and ensuring treated sewage does not leach into the groundwater and/or discharge to the West Fork via monitoring.**
        i. **Doc. 22-4 at 4-5.**
        ii. **Doc. 73-4 at 15.**
    c. **Plaintiffs agree that the District abdicated their legal responsibilities by failing to control irrigation practices or monitor lysimeters under the legal agreement with Boyne.**

21. The District cannot remove, plug, or divert any French drains located on the Meadow Village golf course because it does not own or control this infrastructure. *Id.* ¶ 5.

    a. **Disputed.**
    b. **The District entered into an Agreement with Boyne that states:**
        i. **"The parties agree that the District shall have the right to modify the irrigation system as it deems necessary to satisfy its wastewater disposal needs."**
            1. **Doc. 22-4 at 4-5**

22. DEQ regulates the irrigation of the Meadow Village golf course through a Nutrient Management Plan ("NMP"), which DEQ approved in 2012. The NMP specifies maximum limits for volume of irrigation water and for nutrients like nitrogen

(expressed in pounds of Total Nitrogen per irrigated acre, per year). *Id.* ¶ 6. DEQ is responsible for overseeing the Distsrict's operations under the NMP, and DEQ has never asserted that the District has failed to comply with any of the terms or requirements of the NMP. *Id.* ¶ 7.

   a. **Disputed.**
   b. **The District regulates the irrigation of the golf course through a Nutrient Management Plan ("NMP"), which DEQ approved in 2012.**
   c. **The DEQ is currently investigating whether the District has failed to comply with the terms or requirements of the NMP.**
      i. **Doc. 76-6 at 158-159; 161:1-13.**

23. Plaintiffs have sued Ron Edwards in his official capacity as the Manager of the District. Mr. Edwards supervises the District, the operation of the WRRF and the storage ponds, and manages communications with DEQ, only in his official capacity as an employee of the District. Third Edwards Decl. ¶ 10. Mr. Edwards does not own the WRRF, the holding ponds, or the underdrain system, and does not operate or control any of the District's facilities in his personal capacity. Mr. Edwards also does not personally own, operate, or control the Meadow Village golf course. *Id.*

   a. **Disputed.**
   b. **In his official capacity, Mr. Edwards has misrepresented the District's monitoring efforts, has failed to satisfy the requirements of the NMP, and the agreement between Boyne and the District.**
      i. **Doc. 26-4 at 3; Doc. 77 at 4-5; Exhibit 1.**

DATED this 12h day of November, 2021.

                             /s/ John Meyer
                             JOHN MEYER

*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on November 12, 2021, I served the foregoing STATEMENT OF DISPUTED FACTS via CM/ECF on counsel for defendants listed below:

Jacqueline R. Papez
Cynthia D. Brooks
DONEY CROWLEY P.C.
P.O. Box 1185
50 South Last Chance Gulch, 3rd Floor
Helena, MT 59601
Telephone: (406) 443-2211
Facsimile: (406) 449-8443
jpapez@doneylaw.com
cbrooks@doneylaw.com

Jonathan W. Rauchway (Admitted Pro Hac Vice)
Mave Gasaway (Admitted Pro Hac Vice)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Facsimile: (303) 893-1379
jon.rauchway@dgslaw.com
Mave.Gasaway@dgslaw.com

*Counsel for Defendants*

                             /s/ John Meyer
                             JOHN MEYER

*Attorney for Plaintiffs*