John Meyer
COTTONWOOD ENVIRONMENTAL
LAW CENTER
P.O. Box 412
Bozeman, MT 59771
Telephone: (406) 546-0149
john@cottonwoodlaw.org


*Attorney for Plaintiffs*

Jacqueline R. Papez
Cynthia D. Brooks
DONEY CROWLEY P.C.
P.O. Box 1185
50 South Last Chance Gulch, 3rd Floor
Helena, MT 59601
Telephone: (406) 443-2211
jpapez@doneylaw.com
cbrooks@doneylaw.com


Jonathan W. Rauchway
(*Admitted Pro Hac Vice*)
Andrea M. Bronson
(*Admitted Pro Hac Vice*)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone:  (303) 892-9400
jon.rauchway@dgslaw.com
andrea.bronson@dgslaw.com

*Attorneys for Defendant, Big Sky County
Water & Sewer District No. 363*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, et al.,<br><br>        *Plaintiffs,*<br><br>vs.<br><br>BIG SKY WATER AND SEWER DISTRICT and BOYNE RESORTS,<br><br>        *Defendants.* | Case No. 2:20-cv-00028-BMM<br><br><br>**[PROPOSED] FINAL PRETRIAL ORDER** |

Pursuant to Fed. R. Civ. P. 16 and L.R. 16.4, the parties submit this proposed Final Pretrial Order to govern the first phase of the bifurcated trial in this matter.

## I.  Nature of Action

This is a civil action between Plaintiffs Cottonwood Environmental Law Center, Montana Rivers, and Gallatin Wildlife Association (collectively, "Plaintiffs") and Defendants Big Sky County Water & Sewer District No. 363 (the "District") and Boyne Resorts ("Boyne").  Plaintiffs allege the District violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311, by discharging pollutants to the West Fork of the Gallatin River ("West Fork") without a National Pollutant Discharge Elimination System ("NPDES") permit.

The District provides wastewater and sewer services to an area encompassing over 6,000 acres in Big Sky, Montana.  The District treats wastewater at its Water Resources Recovery Facility ("WRRF") and then stores treated effluent in lined storage ponds.  The District contracts with local golf courses and other properties to provide treated effluent from the ponds as reclaimed irrigation water.

Plaintiffs allege the District is discharging treated effluent from a groundwater underdrain pipe beneath the storage ponds.  The underdrain diverts groundwater beneath the storage ponds to prevent the groundwater from floating the pond liners.  Plaintiffs allege the pond liners leak, adding treated effluent to the soil, where it

2

mixes with groundwater, enters the underdrain, and is discharged from the underdrain pipe through an embankment near the West Fork.

Plaintiffs also claim the Meadow Village golf course is over-irrigated, causing discharges of nitrogen to the West Fork. Plaintiffs joined the golf course owner and operator, Boyne, as a defendant on February 23, 2022. Doc. 111. Boyne's deadline to appear is May 2, 2022.

The Court has bifurcated trial in light of its ruling that the District is not the proper party for Plaintiffs' claims relating to the Meadow Village golf course. Doc. 118 at 1; *see also* Doc. 89 at 8-10. The phase of trial subject to this Order ("Phase One") will address only Plaintiffs' claim against the District, namely, that the District is liable for a violation of the CWA under Plaintiffs' leaking ponds theory of discharge. *See* Doc. 118 at 2; Doc. 116-1 at 3-4. Phase One will not address Plaintiffs' over-irrigation theory or any remedies issues. *Id.*

### **Plaintiffs' Summary Statement of Their Claims**

The Big Sky Water and Sewer District ("District") is violating the Clean Water Act by discharging pollutants into waters of the United States without a National Pollution Discharge Elimination System permit. The District's indirect discharge of pollutants from its holding ponds to groundwater, and ultimately to waters of the United States is the functional equivalent of a direct discharge.

The complaint alleges the District is violating the Clean Water Act by discharging "pollutants" into the West Fork of the Gallatin River. Doc. 111, ¶1, 14, 48. The Clean Water Act defines "pollutant" broadly to include municipal waste. 33 U.S.C. § 1362(6). The treated effluent in the holding ponds is municipal waste. Plaintiffs will show that the holding ponds are leaking, thereby adding (discharging) a pollutant (municipal waste) to the groundwater. The pollutant and groundwater mix and are collected in the underdrain system before being discharged from the underdrain pipe into the West Fork of the Gallatin. Total Nitrogen and Nitrates + Nitrites as Nitrogen are contained within the municipal waste and are also considered pollutants by the Montana DEQ. Doc. 23-3 at 16.

The Court has determined the holding ponds are a point source. Doc. 121. The Supreme Court has previously determined an entire treatment facility was a point source. *See Cnty. of Maui v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1478 (2020) (Kavanaugh, J., concurring).

During its 30(b)(6) deposition, the DEQ provided the water balance equation to determine how much municipal sewage (pollutant) is leaking from the point source holding ponds. Doc. 76-6 at 136-37:20-3. The District agreed with the equation. *See* 76-1 at 35-37. Plaintiffs completed the analysis and determined the point source holding ponds are leaking (adding) nearly 58,000 gallons of a

pollutant (municipal wastewater)/day to the groundwater. Doc. 76-2 at 5. Neither the District nor the DEQ completed a water balance analysis.

The municipal wastewater (pollutant) that is added from the point source holding ponds mixes with groundwater and travels through the underdrain system before being discharged from the underdrain pipe. The lab that the District retained to analyze water samples taken from the underdrain pipe found the first dye after 26.5 hours. Doc. 76-5 at 25. Plaintiffs will show the leakage from the holding ponds is the functional equivalent of a point source discharge.

### **The District's Summary Statement of Its Defenses**

Plaintiffs must show the District, without a permit, discharged pollutants from a point source to a navigable water.  Plaintiffs cannot carry their burden of satisfying these elements by a preponderance of the evidence for at least three reasons.

First, the District's underdrain does not directly discharge pollutants to the West Fork.  The CWA prohibits the "addition of any pollutant to navigable waters from any point source" without a permit.  *See* 33 U.S.C. §§ 1311(a), 1362(12). Pollutants are not "added" to a water body when water containing a pollutant merely is moved between different portions of the same water body.  Instead, a movement of water containing a pollutant only qualifies as a discharge of a pollutant if the water is moved between "meaningfully distinct water bodies."  The Meadow Village aquifer, West Fork, and adjacent wetlands constitute a hydrologically connected

water body, and the underdrain merely facilitates the flow of groundwater from the aquifer in which it naturally exists to a wetland and river it would naturally reach. This is not an "addition" of pollutants. The Court agreed and ruled in favor of the District on this issue in its Order dated March 30, 2022. *See* Doc. 121 at 3, 6-11.

Second, the District's storage ponds are not a point source. Under the CWA, a "point source" is a "discernible, confined and discrete conveyance," such as a pipe or ditch. 33 U.S.C. § 1362(14). The District's storage ponds are not a point source because they are not a conveyance. The ponds do not carry or transport water from point A to point B—they store it. The Court rejected this argument in its Order dated March 30, 2022, ruling that the District's storage ponds would constitute a point source if they leak a pollutant. *See* Doc. 121 at 11-21. Accordingly, the District will not re-argue this issue at trial.

Finally, any leakage from the ponds that indirectly reaches the West Fork via groundwater is not the "functional equivalent of a direct discharge" under the Supreme Court's test in *County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020). The evidence at trial will show that leakage from the ponds is negligible and far less than the amount the Montana Department of Environmental Quality's ("DEQ") regulations allow for storage ponds. In applying *Maui*, courts should endeavor to "preserve state regulation of groundwater and other nonpoint sources of pollution." *Cnty. of Maui*, 140 S. Ct. at 1476.

## II.    Jurisdiction and Venue

The Court has federal question jurisdiction over Plaintiffs' CWA claim. 28 U.S.C. § 1331; 33 U.S.C. §§ 1311, 1365.  Personal jurisdiction is not questioned. The District will not challenge Plaintiffs' standing.  The parties agree that venue is proper in this Court because the District's storage ponds are in Gallatin County, Montana. 33 U.S.C. § 1365(c); 28 U.S.C. § 1391(b); D. Mont. L.R. 1.2(c)(2), 3.2(b).

## III.    Jury Trial

The Phase One trial is set for a jury trial commencing on April 25, 2022.  This trial will address only whether the District is liable under Plaintiffs' leaking ponds theory of discharge.  The District has demanded trial by jury of this issue.  Plaintiffs do not believe a jury trial is necessary.

## IV.    Agreed Facts

The parties have agreed the following facts will require no proof at trial:

1.    The District is a special purpose unit of government formed under Montana Law that encompasses approximately 6,285 acres in Madison and Gallatin Counties.  The District includes a resort community at Big Sky, Montana, consisting of single-family residences, condominiums and townhouses, hotels, restaurants, and commercial centers.  The District provides water and wastewater and sewer services for this community.

2.      The District is a "person" within the meaning of the Clean Water Act, 33 U.S.C. § 1362(5).

3.      The District operates the WRRF in Big Sky, Montana.

4.      The original wastewater treatment facility in Big Sky was constructed in 1973.  The current WRRF was constructed in two phases.  The District completed construction of a tertiary filter plant in 1997 and then a sequencing batch reactor plant in 2004.

5.      Currently, the WRRF treatment process includes four basic steps: (1) removal of debris and grit; (2) treatment within a sequencing batch reactor; (3) filtration; and (4) disinfection.  The WRRF headworks building consists of two influent channels with helical basket screens to remove solid material from the waste stream, a vortex grit removal system, a two-basin sequencing batch reactor that provides secondary treatment with oxidizing bacteria, a tertiary treatment system, and a disinfection system.  Solids are removed from the sequencing batch reactor, treated in two aerobic digesters, and then composted with wood chips.  The tertiary treatment process consists of coagulation, flocculation, sedimentation, and filtration using a multi-media filter.  Disinfection is accomplished by chlorination.

6.      The WRRF contains three lined storage ponds.  Collectively, the ponds span nearly 18 acres and hold approximately 82 million gallons.  The ponds store water during the winter months so the water can be used for irrigation during the

8

growing season, which runs from approximately May through early October depending on weather conditions in a given year.

7.      The District contracts with other entities to provide treated effluent as irrigation water for the Meadow Village, Yellowstone Club, and Spanish Peaks golf courses.

8.      The District's ponds are lined with 60-mil high density polyethylene (HDPE) liners over an engineered and native substrate.

9.      The District installed an underdrain system beneath the storage ponds as part of an improvement project the District completed in 1997.  The underdrain system is an engineered system to prevent the groundwater from floating the pond liners.

10.     DEQ approved the underdrain system at the time it approved the District's pond improvement project.

11.     The storage ponds are not plumbed to the underdrain system.

12.     The West Fork is located approximately 130 feet from the underdrain pipe.

13.     The West Fork is a navigable water.

14.     If the underdrain system did not exist, the groundwater flowing underneath the ponds still would discharge to the West Fork.

15.     Plaintiffs filed this lawsuit on July 10, 2020.

16.   From July 14 to August 12, 2021, Plaintiffs conducted a fluorescein dye test to determine if there was a hydraulic connection between the storage ponds and the West Fork.

17.   Defendant found fluorescein dye in the underdrain pipe.

## V.   Elements of Liability

Plaintiffs assert a claim under the CWA, 33 U.S.C. § 1365(a)(1), for the District's alleged violation of 33 U.S.C. § 1311(a).  *See* 33 U.S.C. § 1365(a)(1), (f). To establish a violation of § 1311(a), Plaintiffs must prove that the District, without a permit, "(1) discharged, i.e. added (2) a pollutant (3) to navigable waters (4) from (5) a point source."  *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 106, 1083 (9th Cir. 2019) (quoting *Comm. To Same Mokelumne River v. E. Bay Mun. Util. Dist.*, 13 F.3d 305, 308 (9th Cir. 1993)); *see also Cnty. of Maui*, 140 S. Ct. at 1468 ("The Clean Water Act forbids the 'addition' of any pollutant from a 'point source' to 'navigable waters' without the appropriate permit.").

## VI.   Defense Elements

The following are elements of defenses the District asserts to the claim being tried in Phase One:

1.   The District does not directly discharge to the West Fork because the underdrain does not "add" pollutants to the river.  33 U.S.C. § 1362(12); *L.A. Cnty. Flood Control Dist. v. Nat. Res. Def. Council*, 568 U.S. 78, 82 (2013); *S. Fla. Water*

*Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 109-12 (2004); *ONRC Action v. United States Bureau of Reclamation*, 798 F.3d 933, 937-38 (9th Cir. 2015). The Court agreed and ruled in favor of the District on this issue in its Order dated March 30, 2022. *See* Doc. 121 at 3, 6-11.

      2.      To qualify as the "functional equivalent of a direct discharge" under *Maui*, an indirect discharge must originate from a point source. *Cnty. of Maui*, 140 S. Ct. at 1467, 1476. The District contends that its storage ponds are not a point source. The Court rejected this argument in its Order dated March 30, 2022, ruling that the District's storage ponds would constitute a point source if they leak a pollutant. *See* Doc. 121 at 11-21. Accordingly, the District will not re-argue this issue at trial.

      3.      Any leakage from the District's storage ponds that reaches the West Fork does not constitute "the functional equivalent of a direct discharge" under the *Maui* test. *Cnty. of Maui*, 140 S. Ct. at 1476-77.

      4.      Plaintiffs' claim is barred by the statute of limitations to the extent they allege violations that occurred before May 11, 2015. 28 U.S.C. § 2462; *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522-23 (9th Cir. 1987).

## VII.  Relief Sought

### Plaintiffs' Request for Relief

For purposes of Phase I of the trial, Plaintiffs seek the following relief:

1.  A verdict and judgment that the District has been in violation of the Clean Water Act since May 11, 2015, by discharging pollutants to navigable waters without an NPDES permit.

If the District is found liable for violations of the Clean Water Act, Plaintiffs will also seek:

2.  An order that enjoins the District from accepting any new sewer connections.

3.  An order that requires interim pollution monitoring and mitigation measures until the District complies with CWA.

4.  An order that requires the District to take actions that remediate environmental harm caused by their unlawful discharge.

5.  An order that awards Plaintiffs their reasonable litigation costs and expenses, including attorney and expert fees.

6.  An order that requires the District to pay civil fines for violations of the CWA since May 11, 2015.

7.  An order that awards Plaintiffs their litigation costs (including reasonable attorney and expert witness fees) pursuant to 33 U.S.C. § 1365(d).

**<u>The District's Request for Relief</u>**

The District seeks a judgment in its favor that dismisses with prejudice the claims against the District in Plaintiffs' Third Amended Complaint for Declaratory

and Injunctive Relief.  The District also seeks an award of litigation costs (including reasonable attorney and expert witness fees) pursuant to 33 U.S.C. § 1365(d) or 28 U.S.C. § 1919.

## VIII.  Legal Issues

The District believes there are no legal issues that must be decided before trial. At trial, the jury must determine whether Plaintiffs have proved the elements of their CWA claim, namely, that the District, without a permit, (1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a point source.

## IX.  Dismissals

Cottonwood does not request or propose any dismissal of parties, claim, or defenses at this time.

The District does not request or propose any dismissals of parties, claims, or defenses at this time.

## X.  Discovery Documents

The District will not offer any specific answers to interrogatories or responses to requests for admissions as exhibits.

Plaintiffs will not offer any specific answers to interrogatories or responses to requests for admissions as exhibits.

## XI.  Estimate of Trial Time

By order of the Court, the Phase One trial will commence on April 25, 2022.

Cottonwood will call one expert witness and one DEQ employee. Plaintiffs estimate the trial will take two days.

The District will call two lay witnesses and two expert witnesses.  The District estimates trial will take three days.

## XII.  Supersession

This Order supersedes the pleadings in this matter.

DATED _____.


_____
Brian M. Morris, Chief District Judge
United States District Court



Approved as to form and content:

| | |
|---|---|
| */s/ John Meyer* | */s/ Jacqueline R. Papez* |
| John Meyer | Jacqueline R. Papez |
| COTTONWOOD | DONEY CROWLEY P.C. |
| ENVIRONMENTAL LAW CENTER | |
| | |
| *Attorney for Plaintiffs* | */s/ Jonathan W. Rauchway* |
| | Jonathan W. Rauchway |
| | DAVIS GRAHAM & STUBBS LLP |
| | |
| | *Attorneys for Defendant Big Sky County* |
| | *Water & Sewer District No. 363* |

14