Jacqueline R. Papez
Cynthia D. Brooks
DONEY CROWLEY P.C.
P.O. Box 1185
50 South Last Chance Gulch, 3rd Floor
Helena, MT 59601
Telephone: (406) 443-2211
jpapez@doneylaw.com
cbrooks@doneylaw.com

Jonathan W. Rauchway (*pro hac vice*)
Andrea M. Bronson (*pro hac vice*)
Michael Golz
DAVIS GRAHAM & STUBBS LLP
3400 Walnut Street, Suite 700
Denver, CO 80205
Telephone: (303) 892-9400
jon.rauchway@davisgraham.com
andrea.bronson@davisgraham.com
michael.golz@davisgraham.com

*Counsel for Defendant Big Sky County
Water & Sewer District No. 363*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER,<br><br>                    *Plaintiff,*<br>vs.<br><br>BIG SKY WATER AND SEWER DISTRICT; BOYNE RESORTS,<br><br>                    *Defendants.* | Case No. 2:20-cv-00028-BMM<br><br>**BIG SKY COUNTY WATER AND SEWER DISTRICT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO SET ASIDE JUDGMENT FOR FRAUD ON THE COURT** |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................ ii

EXHIBIT INDEX ............................................................................... iii

TABLE OF AUTHORITIES................................................................. iv

INTRODUCTION ................................................................................1

PROCEDURAL HISTORY ..................................................................2

LEGAL STANDARDS ........................................................................5

ARGUMENT .......................................................................................6

    I.    Cottonwood's theory of fraud is wrong and has already been
        rejected by this Court and others...........................................6

        A.    Cottonwood willfully ignores basic facts. ..................6

        B.    This Court has already rejected Cottonwood's theory of
              fraud ...................................................................10

        C.    Cottonwood's allegations of fraud have been rejected
              by DEQ, EPA, and the state district court.................11

    II.    The Court should put this matter to rest and sanction
        Cottonwood and its counsel for their baseless and repeated
        harassment of the District and Mr. Edwards. ......................14

        A.    Order Finding the District Did Not Lie at Trial........15

        B.    Attorneys' Fees........................................................16

        C.    Filing Restriction.....................................................17

CONCLUSION ..................................................................................18

## EXHIBIT INDEX

Exhibit 1        Amended Complaint in Case No. DV-22-1121A
                 (Dec. 12, 2022)

Exhibit 2        Order re Motion to Dismiss in Case No. DV-22-1121A
                 (June 9, 2023)

Exhibit 3        Summary Judgment Order in Case No. DV-22-1121A
                 (Jan. 2, 2025)

Exhibit 4        DEQ Second Investigation Closure Letter (Mar. 5, 2024)

Exhibit 5        Cottonwood Status Report in Case No. DV-22-1121A
                 (Dec. 18, 2024)

Exhibit 6        Complaint in Case No. 2:25-cv-00033-TJC (Mar. 21, 2025)

Exhibit 7        Declaration of Ron Edwards (Mar. 28, 2025)

Exhibit 8        Expert Deposition Excerpts (Sept. 23, 2021)

Exhibit 9        Trial Exhibit 226, WRRF Diagram (Apr. 26, 2022)

Exhibit 10       DEQ's Response to Cottonwood's Motion for Summary
                 Judgment in Case No. DV-22-1121A (May 29, 2024)

Exhibit 11       Cottonwood Emails to EPA CID (various dates)

Exhibit 12       Cottonwood Criminal Investigation Memo (July 26, 2024)

Exhibit 13       Cottonwood Social Media Posts (various dates)

Exhibit 14       Meyer Continuing Legal Education Presentation
                 (Sept. 27, 2024)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*,
146 F.3d 1071 (9th Cir. 1998) ................................................................17

*Cottonwood Env't L. Ctr. v. Edwards*,
86 F.4th 1255 (9th Cir. 2023) ..........................................................3, 11

*Cottonwood Env't L. Ctr. v. Edwards*,
No. 22-36015, 2024 U.S. App. LEXIS 674 (9th Cir. Jan. 10, 2024) ...................3

*De Long v. Hennessey*,
912 F.2d 1144 (9th Cir. 1990) ................................................................17

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ....................................................5, 6, 16

*Mazzei v. Money Store*,
62 F.4th 88 (2d Cir. 2023) ................................................................15

*Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) ................................................................16

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*,
31 F.4th 1124 (9th Cir. 2022) ................................................................5

*Caputo ex rel. United States of Am. v. Tungsten Heavy Powder, Inc.*,
96 F.4th 1111 (9th Cir. 2024) ................................................................17

*United States v. Sierra Pac. Indus., Inc.*,
862 F.3d 1157 (9th Cir. 2017) ..........................................................5, 10

*United States v. Stonehill*,
660 F.3d 415 (9th Cir. 2011) ................................................................5

**Statutes**

28 U.S.C. § 1927 ..........................................................................5, 16, 17

Big Sky County Water and Sewer District No. 363 (the "District") submits this Brief in Opposition to the Motion to Set Aside Judgement for Fraud on the Court (ECF No. 235, the "Motion") filed by Plaintiff Cottonwood Environmental Law Center ("Cottonwood").

## **INTRODUCTION**

Cottonwood's allegations of fraud on the Court are flat wrong and based on a willful misapprehension of basic facts. After losing at trial in April of 2022, Cottonwood spun up a conspiracy that the District's former General Manager, Ron Edwards, lied to the jury. Mr. Edwards' testimony demonstrated that Cottonwood's expert, Tom Aley, made a critical error: He failed to account for exports of reclaimed water to the Yellowstone Club ("YC") and Spanish Peaks Mountain Club ("SP") in estimating leakage from the District's reclaimed-water storage ponds. Cottonwood now claims that the YC/SP export data relied on by Mr. Edwards were "estimated" and "never recorded." But Cottonwood is wrong—the data were not estimated and were recorded using a meter.

The Motion is yet another chapter in Cottonwood's crusade against the District and Mr. Edwards. Cottonwood sued them in federal and state court; filed civil complaints with the Montana Department of Environmental Quality ("DEQ") and U.S. Environmental Protection Agency ("EPA"); requested criminal prosecution by the EPA Criminal Investigation Division ("EPA CID") under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"); publicized its allegations of fraud on social media; and claimed that Mr. Edwards lied at trial during a Continuing Legal Education presentation on behalf of the State Bar of Montana. And, on March 21, 2025, after filing the Motion, <u>Cottonwood filed a federal RICO lawsuit against Mr. Edwards and the District's attorney, Jon Rauchway,</u> as well as other individuals in Big Sky. Cottonwood's actions make a mockery of the jury's verdict and jeopardize the reputations and livelihoods of anyone who finds themselves the target of Cottonwood's delusions.

Cottonwood's harassment of the District, Mr. Edwards, and their counsel must end. The District respectfully requests that the Court: (1) deny Cottonwood's frivolous Motion; (2) enter an order finding that the District, Mr. Edwards, and their counsel did not present false evidence at trial; (3) award the District its attorneys' fees in responding to the Motion; and (4) enter an order requiring Cottonwood to obtain leave of the Court before filing further motions against the District or its current or former employees.

## PROCEDURAL HISTORY

In July 2020, Cottonwood sued the District under the federal Clean Water Act ("CWA"), alleging that the District discharged reclaimed water from the storage ponds at its Water Resource Recovery Facility ("WRRF") to the West Fork Gallatin

River ("West Fork") without a permit.  (ECF No. 1, ¶ 27.)[1]  Specifically, Cottonwood alleged that the District's ponds were leaking into the aquifer and traveling to the West Fork via perforated piping known as the "underdrain."  (ECF No. 111 ("Amended Complaint"), ¶¶ 3–5; *see also* ECF No. 77 at 16.)

Cottonwood tried its claim against the District to a jury on April 25 and 26, 2022 (the "2022 Trial").  (*See* ECF Nos. 132, 137.)  The jury found in favor of the District, and the Court entered judgment for the District.  (ECF Nos. 142, 157.)

In June of 2022, Cottonwood moved for a new trial, arguing, among other things, that the District "presented false evidence."  (ECF No. 173 at 6–7.)  The Court denied the motion.  (ECF No. 198.)

Cottonwood appealed, challenging the Court's summary judgment orders and jury instructions.  (ECF No. 210.)  The Ninth Circuit affirmed judgment in favor of the District.  *See Cottonwood Env't L. Ctr. v. Edwards*, 86 F.4th 1255, 1264 (9th Cir. 2023).  Cottonwood petitioned for rehearing en banc, but the petition was denied.  *See Cottonwood Env't L. Ctr. v. Edwards*, No. 22-36015, 2024 U.S. App. LEXIS 674 (9th Cir. Jan. 10, 2024).

---

[1] Page citations to documents filed on the docket reference the pagination created by the CM/ECF system.  Page citations to the District's exhibits reference the page numbers stamped by the District on each exhibit.

While Cottonwood's federal lawsuit against the District proceeded, Cottonwood sought relief in other venues. It sued the District and its former General Manager, Ron Edwards, along with DEQ, in state court. (*See* Amended Complaint in Case No. DV-22-1121A, attached as Exhibit 1.) Judge Ohman dismissed the claims against the District and Mr. Edwards in June of 2023, and granted summary judgment to DEQ in January of 2025. (*See* Orders re Motions to Dismiss and for Summary Judgment in Case No. DV-22-1121A, attached as Exhibits 2 and 3.)

Cottonwood also filed complaints with DEQ and EPA, including with EPA's Criminal Investigation Division. The agencies investigated and rejected Cottonwood's claims. (*See* DEQ Second Investigation Closure Letter (Mar. 5, 2024), attached as Exhibit 4; ECF No. 237-8 (EPA investigation report); Cottonwood Status Report in Case No. DV-22-1121A at 7 (email from EPA dated December 17, 2024), attached as Exhibit 5.)

Cottonwood now returns to this Court to ask—for a second time—to set aside the jury's verdict in favor of the District on grounds of false evidence. (*See* Motion at 1.) Mere days after filing this Motion, Cottonwood also sued Mr. Edwards and Mr. Rauchway in federal court under RICO. (*See* Complaint in Case No. 2:25-cv-00033-TJC, attached as Exhibit 6.)

## LEGAL STANDARDS

**Fraud on the Court.**  The standard to establish "fraud on the court" is exceedingly high and is met only in instances of "egregious misconduct." *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1132–34 (9th Cir. 2022) (quotation omitted).  The misconduct must be "newly discovered," *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017) (quotation omitted), and must be established by clear and convincing evidence, *United States v. Stonehill*, 660 F.3d 415, 443–44 (9th Cir. 2011).

But these high standards are beside the point.  Cottonwood's theory of fraud has no basis in reality, and its Motion fails under any standard and any burden.

**Sanctions.**  "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Similarly, "[a] district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  This includes instances "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 991 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)).  Sanctions are appropriate under § 1927 or the Court's inherent

authority when there is a showing of bad faith or reckless conduct. *See Fink*, 239 F.3d at 994 ("Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose.").

## **ARGUMENT**

### I.    **Cottonwood's theory of fraud is wrong and has already been rejected by this Court and others.**

#### A.    **Cottonwood willfully ignores basic facts.**

Cottonwood's theory is that the District (and one of the undersigned counsel) presented data at trial without disclosing that the data were based on estimates, or were "never recorded." (ECF No. 236 ("Pl.'s Br.") at 6, 9–12.) The District's former General Manager, Ron Edwards, testified that Cottonwood's pond leakage calculations failed to account for reclaimed water exported to YC and SP outside the irrigation season and demonstrated that Cottonwood therefore grossly overestimated leakage. (ECF No. 160 at 69–72 (205:21–208:6).) Cottonwood asserts that the District "falsified" the volumes exported to YC and SP in 2020. (*See* Pl.'s Br. at 10.) Cottonwood is simply wrong—these volumes were never estimated, and the data were recorded using a meter.

The District operates multiple pumphouses to convey reclaimed water throughout Big Sky. (Decl. of Ron Edwards dated March 28, 2025, ¶¶ 4–5, attached as Exhibit 7.) The water exported to YC and SP is withdrawn from Pond 1 and

pumped through a building called the "YC/SP Pump Station No. 1." (*Id.* ¶ 5.) By contrast, the water sent to the North Loop and South Loop of the Meadow Village Golf Course is withdrawn from Pond 3 and pumped through the "Irrigation Pump Room"—housed in an entirely separate building from the YC/SP Pump Station No. 1. (*Id.* ¶¶ 4–5, 10.) The YC/SP Pump Station No. 1 and the Irrigation Pump Room contain separate meters. (*Id.* ¶¶ 6, 10.)

The Irrigation Pump Room flooded in March 2020. (*Id.* at 10.) The flood damaged the meters used for the South Loop of the Meadow Village Golf Course. (*Id.* ¶ 8.) As a result, the District estimated the volumes of water pumped to this portion of the golf course while the South Loop irrigation meters were down. (*Id.*) But the meter in the YC/SP Pump Station No. 1, which measures the volumes of water exported to YC and SP, was not impacted by the flood in any way. (*Id.* ¶¶ 8, 10.) It was these volumes of water sent to YC and SP in 2020—measured by a fully operational meter contained in the YC/SP Pump Station No. 1—that the District used at trial to show the errors in Cottonwood's water balance. (*Id.* ¶¶ 6, 10.)

None of this information is new, and it was all disclosed to Cottonwood prior to the 2022 Trial. On September 10, 2021, the District disclosed to Cottonwood the rebuttal expert report of Scott Buecker (the "Buecker Report"). (*See id.* at 8–15.) The Buecker Report detailed the March 2020 flood of the Irrigation Pump Room and the ensuing damage to the South Loop irrigation meters. (*Id.* at 10.) The Report

stated that "there [wa]s no South Loop meter data in 2020," and that, as a result, "operators estimated the amount pumped from the South Loop pumps through the South Loop meter . . . ."    (*Id.*)  Cottonwood asked about this flood during its depositions of the District's experts.  (Expert Deposition Excerpts at 3 (21:3–22:4), 5 (37:5–39:21), attached as <u>Exhibit 8</u>.)  Both the District's expert and Cottonwood's expert reviewed the estimated South Loop data, and each incorporated it in their expert reports.  (*See* Ex. 7 at 10–11 (Buecker report), 22–27 (Aley reports).)

The South Loop estimates also were disclosed during the 2022 Trial. Cottonwood's Trial Exhibit 112, an Excel spreadsheet displaying export volumes, stated that the South Loop volumes were estimated.   (Ex. 7 ¶ 9; *id.* at 17.) Cottonwood's expert testified about this data in explaining his conclusion that the District's ponds leaked 21 million gallons in 2020.  (ECF No. 159 at 89 (89:14–20).) Trial Exhibit 112—and the 2020 irrigation tab in particular—also was displayed and discussed during his cross-examination.  (*See* ECF No. 159 at 127 (127:4–11).) Because of the estimated South Loop data, Mr. Edwards himself testified that the water budget presented to the jury was an "estimate."  (ECF No. 160 at 74–75 (210:24–211:2); Ex. 7 ¶ 9.)  However, the South Loop data were never in dispute.  It was the YC/SP export volumes from outside the irrigation season—the subject of Cottonwood's theory of fraud on the Court—that undermined Cottonwood's pond leakage calculations.  (ECF No. 159 at 130:19–13:9; ECF No. 160 at 206:3–24.)

The YC/SP export data were not estimated, and no one at the District has ever suggested that they were. (*See* Ex. 7 at 18–20 (recorded YC/SP export data contained in Cottonwood's Trial Exhibit 112).)

Cottonwood's failure to comprehend the difference between the South Loop data and the YC/SP export data is inexplicable. At trial, the District explained that it sends reclaimed water to the Meadow Village Golf Course and YC and SP via different pumphouses. (ECF No. 160 at 186:4–189:9.) Cottonwood, the Court, and the jury were shown a graphic illustrating the different pipelines running to the Meadow Village Golf Course vs. YC and SP—with different origin points in different ponds. (Trial Ex. 226 (WRRF diagram), attached as Exhibit 9; *see also* ECF No. 160 at 50–52 (186:23–188:23) (explaining the diagram).)

Attempting to cast doubt on the clear picture drawn at the 2022 Trial, Cottonwood repeatedly points to Mr. Edwards' 2024 deposition in Cottonwood's subsequent state-court litigation. In that deposition, taken two years after the 2022 Trial, Mr. Edwards recounted the March 2020 flood in the Irrigation Pump Room and testified that the District's 2020 total water volume data were "based on estimates" because the District "didn't have all the meters in place"—referring to the damaged South Loop meters. (ECF No. 237-5 at 4 (42:3–43:16).) This does not mean that all of the data underlying the District's 2020 water volumes were estimated—they weren't. It simply means that the 2020 total volume contained an

estimate for the downed South Loop meters.  (*See* Ex. 7 ¶ 8.)  This comports with the District's pretrial disclosures and Mr. Edwards' testimony at the 2022 Trial.

In sum, the District did not estimate the volumes exported to YC and SP, and the estimates that the District did make regarding the 2020 South Loop volumes were clearly communicated to Cottonwood before and during the 2022 Trial.  Instead of presenting clear and convincing evidence of a newly discovered, unconscionable scheme, *see Sierra Pac. Indus., Inc.*, 862 F.3d at 1168, Cottonwood has merely demonstrated its reckless indifference to the facts.

**B.    This Court has already rejected Cottonwood's theory of fraud.**

Cottonwood's cries of "false evidence" should be familiar to this Court.  On June 2, 2022, Cottonwood filed a motion for a new trial on the ground that "[the District] presented false evidence regarding the amount of treated sewage the holding ponds are leaking."  (ECF No. 173 at 3.)  The Court rejected Cottonwood's theory, holding that the "jury performed its duty in weighing the evidence presented to it" and "found [the District's] methodology to be the more accurate interpretation."  (ECF No. 198 at 2.)  The Court noted that "Plaintiff's expert admitted to misinterpreting the leakage data and thereby miscalculating the results as presented in his expert reports during the trial."  (*Id.*)

Nothing has changed.  Cottonwood's sole basis for filing another motion to set aside the judgment is Mr. Edwards' 2024 deposition testimony.  (*See* Pl.'s Br. at

10–11 (citing ECF No. 237-5).)  But Mr. Edwards never testified that the export volumes to YC and SP were estimated—not in 2022, and not in 2024.  (*E.g.*, ECF No. 237-5; Ex. 7 ¶¶ 6, 8–9.)  As explained above, Mr. Edwards' 2024 testimony was consistent with his testimony during the 2022 Trial.

The case against the District has closed.  (*See* ECF No. 209.)  Cottonwood lost—at trial (ECF Nos. 142, 157), on its motion for a new trial (ECF No. 198), and on appeal, *Cottonwood Env't L. Ctr.*, 86 F.4th 1255.  This Court should, once again, reject Cottonwood's unsubstantiated allegations of fraud and its attempt to relitigate matters decided by a jury.

## C. Cottonwood's allegations of fraud have been rejected by DEQ, EPA, and the state district court.

The impetus for Cottonwood's Motion is clear—it has exhausted every conceivable avenue for pursuing its allegations against the District and Mr. Edwards. Cottonwood's claims have been rejected time and again.

DEQ rejected these claims.  After the 2022 Trial, Cottonwood filed another complaint with DEQ alleging that the District's ponds were leaking.  (*See* Ex. 4 at 2.)  DEQ reviewed the documents, expert reports, and testimony submitted by Cottonwood and conducted a follow-up investigation of the District.  (*Id.* at 3.)  On March 5, 2024, DEQ issued a letter closing the investigation.  (*Id.* at 2–3.)  DEQ found no violation and concluded that the "reports authored by Aley and Osorno [Cottonwood's experts] fail[ed] to provide credible evidence of leakage."  (*Id.* at 3.)

Meanwhile, Cottonwood also filed a complaint with EPA. (*See* ECF No. 237-8 at 6.) EPA conducted a thorough investigation. It inspected the District's facility and reviewed multiple lines of evidence, including Cottonwood's water balance and dye tracer study and the District's chemical analyses. (*See id.* at 8–11.) Regarding the water balance, EPA concluded that the data from 2015 to 2020 "represent[ed] a very good mass balance with a difference of less than 0.1% between estimated inflows and estimated outflows" over the period. (*Id.* at 10.) EPA rejected Cottonwood's theory of gross leakage from the storage ponds and closed the investigation. (*See id.* at 11.)

Cottonwood argues that the District undermined the investigations by providing the same "false evidence" to DEQ and EPA. (Pl.'s Br. at 6–7.) As explained in Section I.A, Cottonwood's theory that the District falsified its export data is simply incorrect. Regardless, the agencies considered and rejected Cottonwood's theory. DEQ concluded that the "uncontroverted evidence" shows that it did not rely on "falsified data." (DEQ's Response to Cottonwood's Motion for Summary Judgment in Case No. DV-22-1121A at 19, attached as <u>Exhibit 10</u>.)

EPA also evaluated Cottonwood's allegations of fraud. In April 2024, Mr. Meyer—one of Cottonwood's attorneys—contacted the EPA Criminal Investigation Division. (*See* Cottonwood Emails to EPA CID at 1, attached as <u>Exhibit 11</u>.) He alleged that Mr. Edwards' April 2024 deposition proved the District falsified data

regarding its exports to YC and SP. (*See id.*) He then submitted a *41-page memorandum* "outlin[ing] criminal liability for violations of the Clean Water Act and [RICO]" by the District and Mr. Edwards. (*See* Cottonwood's Criminal Investigation Memo dated July 26, 2024, attached at <u>Exhibit 12</u>.) The memorandum laid out Mr. Meyer's theory of fraud in elaborate detail. (*See id.* at 2–4, 11–13.) It did not persuade EPA CID. In December 2024, the Agency confirmed that any investigations into the District and Mr. Edwards had closed. (*See* Ex. 5 at 7.)

While its complaints to DEQ and EPA were pending, Cottonwood also sued DEQ, the District, and Mr. Edwards in state court. There, Cottonwood again alleged that Mr. Edwards "provided false information to the federal jury about how much the holding ponds are leaking," (Ex. 1 at 11, ¶ 48), and that DEQ had failed to investigate, (*see, e.g., id.* ¶ 50). Recognizing that Cottonwood was simply relitigating its failed CWA case against the District, Judge Ohman dismissed Cottonwood's claims against the District and Mr. Edwards as barred by claim and issue preclusion. (*See* Ex. 2 at 7–15.) In his later order granting summary judgment to DEQ, Judge Ohman observed that this Court already denied Cottonwood's motion for a new trial on grounds of "false evidence." (*See* Ex. 3 at 5.) Judge Ohman concluded that Cottonwood was attempting to collaterally attack the federal judgment after having failed to appeal the issue of "false evidence" to the Ninth Circuit. (*See id.* at 37.)

Cottonwood has now presented its frivolous fraud theory to this Court, the state district court, DEQ, EPA Civil, and EPA CID.  The theory has been rejected every time—because there was no fraud.  The Court should deny the Motion.

II.  **The Court should put this matter to rest and sanction Cottonwood and its counsel for their baseless and repeated harassment of the District and Mr. Edwards.**

Cottonwood's efforts to harass and discredit the District and Mr. Edwards, and cast doubt on the Court's final judgment, have not been limited to lawsuits and investigations under the Clean Water Act.  Cottonwood has posted on social media platforms such as Instagram, claiming that "Big Sky Water and Sewer District lied during a 2022 trial."  (*See, e.g.*, Cottonwood Social Media Posts at 3, attached as Exhibit 13.)  Cottonwood also posted information on its website alleging that the data "provided to the jury had never been recorded."  (*Id.* at 5.)  In September 2024, Mr. Meyer gave a Continuing Legal Education presentation in which he told the audience that Mr. Edwards lied at trial.  (*See* Ex. 13 at 3; Meyer CLE Presentation at 27–28, 44, attached as Exhibit 14.)  And in October 2024, Mr. Meyer made the same allegations in an article published by Montana Independent News.[2]

After it filed the Motion, Cottonwood's harassment reached new heights.  On March 21, 2025, Cottonwood filed a RICO lawsuit against Mr. Edwards and Mr.

_____

[2] Available at https://montanaindependent.substack.com/p/cottonwood-claims-gianforte-and-deq.

<u>Rauchway</u>.  (*See* Ex. 6.)  In that action, Cottonwood relies on the now-familiar allegation that Mr. Edwards and Mr. Rauchway presented false evidence to the jury during the 2022 Trial to once again accuse Mr. Edwards and Mr. Rauchway of fraud. (*See id.* ¶¶ 16–17, 50–55, 149–53.)

As Cottonwood's conduct since the 2022 Trial makes clear, mere denial of its Motion will not deter Cottonwood from continuing to harass the District, Mr. Edwards, and their counsel.  The District respectfully requests that the Court put an end to Cottonwoood's pattern of vexatious litigation by: (1) entering an order finding that the District, Mr. Edwards, and their counsel did not present false evidence at trial; (2) awarding the District its attorneys' fees in responding to the Motion; and (3) entering an order requiring Cottonwood to obtain leave of the Court before filing further motions against the District or its current or former employees.

## A.    Order Finding the District Did Not Lie at Trial

The District requests that, in denying the Motion, the Court expressly find that the District, Mr. Edwards, and their counsel did not present "falsified evidence" during the 2022 Trial.  "Litigants, courts, and the public have a significant stake in assuming that final judgments remain final."  *Mazzei v. Money Store*, 62 F.4th 88, 95 (2d Cir. 2023).  Yet for three years, Cottonwood has peddled its claims of fraud in every venue possible—federal court, state court, DEQ, EPA Civil, EPA CID, and the court of public opinion—in an attempt to undermine the legitimacy of the Court's

final judgment.  And now, Cottonwood has filed a racketeering lawsuit against Mr. Edwards and Mr. Rauchway, alleging the same baseless claims of fraud that underlie the Motion.  Cottonwood has demonstrated that it will misrepresent or recklessly disregard the facts to continue harassing and disparaging the District, Mr. Edwards, and their counsel.  In order to prevent further misconduct by Cottonwood, the District requests a clear finding that Cottonwood is incorrect.

### B.      Attorneys' Fees

The Court may award the District its attorneys' fees under 28 U.S.C. § 1927 or the Court's inherent authority to impose sanctions.  *See Fink*, 239 F.3d at 991. The standards are similar:  The Court must find "bad faith," but "reckless conduct" suffices.  *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).  "Reckless misstatements" of law or fact, "when combined with an additional factor such as frivolousness, harassment, or an improper purpose," "are sanctionable under a court's inherent authority."  *Fink*, 239 F.3d at 994.

In filing the Motion, Cottonwood has recklessly disregarded basic facts.  It continues to make serious accusations against the District and Mr. Edwards based on its erroneous belief that the District falsified data for reclaimed-water exports to YC and SP.  As explained in Section I.A, the data were recorded by a meter in the YC/SP Pump Station No. 1.  Disregarding pretrial disclosures and clear trial testimony that debunk its theory, Cottonwood has crusaded against the District and

Mr. Edwards for three years, escalating to allegations of *criminal racketeering*. Given that Cottonwood's theory of fraud has no factual support and has now been rejected numerous times—including by this Court—its Motion can only be characterized as frivolous, harassing, and recklessly undertaken. It would be hard to imagine conduct more worthy of sanctions. The Court should award the District its attorneys' fees in responding to the Motion and hold Cottonwood and its counsel of record jointly and severally liable for the fee award. *See Caputo ex rel. United States of Am. v. Tungsten Heavy Powder*, Inc., 96 F.4th 1111, 1121 (9th Cir. 2024) (holding counsel jointly and severally liable under § 1927 for attorneys' fees awarded as sanctions against party).

### C.    Filing Restriction

"[D]istrict courts have inherent power to control their dockets." *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc*., 146 F.3d 1071, 1074 (9th Cir. 1998) (quotation omitted). And "[u]nder the power of 28 U.S.C. § 1651(a), enjoining litigants with abusive and lengthy histories is one such form of restriction that [a] district court may take." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990).

The District requests that the Court enter an order prohibiting Cottonwood from filing any further motions against the District without leave of the Court. Such an order is appropriately tailored to Cottonwood's vexatious pattern of litigation. Cottonwood tried its case against the District and lost. It moved for a new trial on

grounds of "false evidence" and lost. It appealed to the Ninth Circuit and lost. After pursuing collateral attacks on the Court's judgment in a host of other venues, Cottonwood now proceeds with its frivolous Motion three years after judgment was entered in the District's favor. There is nothing left to be done in this case or in any other venue, and the District deserves repose.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion. The District also respectfully requests that the Court: (1) enter an order finding that the District, Mr. Edwards, and their counsel did not present false evidence at trial; (2) award the District its attorneys' fees in responding to the Motion; and (3) enter an order requiring Cottonwood to obtain leave of the Court before filing further motions against the District or its current or former employees.

DATED this 28th day of March, 2025.

*/s/ Jacqueline R. Papez*
Jacqueline R. Papez
DONEY CROWLEY P.C.

*/s/ Jonathan W. Rauchway*
Jonathan W. Rauchway
DAVIS GRAHAM & STUBBS LLP

*Attorneys for Big Sky County Water and Sewer District No. 363*

## <u>CERTIFICATION OF COMPLIANCE</u>

The undersigned certifies that the foregoing document complies with Local Rule 7.1(d)(2).  The Brief contains 4,286 words, excluding the caption, certificate of compliance, table of contents, exhibit list, table of authorities, and certificate of service.  The undersigned relied on the word count of the word-processing system used to prepare the brief.

*/s/ Beatriz Esparza*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of March, 2025, a true and correct copy of the foregoing **BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO SET ASIDE JUDGMENT FOR FRAUD ON THE COURT** was filed and served via ECF on the following parties:

John Meyer
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149
john@cottonwoodlaw.org

David A. Bricklin
Zachary K. Griefen
Bricklin & Newman, LLP
123 NW 36th Street
Suite 205
Seattle WA 98107
(206) 264-8600
bricklin@bnd-law.com
greifen@bnd-law.com

*Counsel for Plaintiff*

*/s/ Beatriz Esparza*