## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

COTTONWOOD
ENVIRONMENTAL LAW
CENTER,

             Plaintiff,

    v.

BIG SKY WATER AND SEWER
DISTRICT; BOYNE USA, INC.,

             Defendant.

No. 2:20-CV-00028-BMM


**ORDER**

### INTRODUCTION

Plaintiff Cottonwood Environmental Law Center ("Cottonwood") filed a motion to vacate the judgment of the Court. (Doc. 235.) Cottonwood bases its motion on the theory that Defendants committed fraud on the Court by hiding evidence during the 2022 trial. (*See* Doc. 236.) Defendant Big Sky Water and Sewer District ("BSWSD") opposes the motion. (Doc. 238.) Cottonwood also filed a motion to strike a sur-reply filed by BSWSD in response to Cottonwood's reply to the motion to vacate. (Doc. 243.) BSWSD opposes that motion. (Doc. 247.) The Court held a hearing on June 9, 2025. (Doc. 261.)

## FACTUAL AND PROCEDURAL BACKGROUND

The motions before the Court stem from a Clean Water Act lawsuit that Cottonwood initiated in July 2020. (*See* Doc. 1.) Cottonwood tried its claim against BSWSD before a jury in April 2022. Cottonwood sought to pre-admit Exhibit 112 and Exhibit 113 at the final pre-trial conference. (Doc. 1124-2 at 2.) The Court admitted Exhibit 112 and Exhibit 113 without objection. (Docs. 132; 139 at 1; and 145 at 1.) Cottonwood acknowledged before trial that Exhibit 112 and Exhibit 113 were duplicate Excel spreadsheets: "We accidentally duplicated. We put 112 and 113 in there, and they're essentially the same thing." (Doc. 159 at 82.) Exhibit 112 and Exhibit 113 are Excel spreadsheets that contain data reflecting, among other things, water that BSWSD exported from its holding pond to the Yellowstone Club and Spanish Peaks to be used to irrigate golf courses there. (Doc. 159 at 11-12.)

Cottonwood sought, immediately before jury selection, to introduce Exhibit 119. Cottonwood explained that Exhibit 119 represented another Excel spreadsheet provided by BSWSD that contained data regarding BSWSD's export of water from its holding pond for irrigation. (*Id.* at 81.) Cottonwood justified the admission of Exhibit 119 on the basis that "it contains variables not included in 112 – 113." (*Id.* at 82.) The Court declined to admit Exhibit 119 after BSWSD objected on the grounds that it had not had time to review the entirety of the extensive Excel spreadsheet to confirm that it matched the data in Exhibit 112 and Exhibit 113:

2

> I will not admit this exhibit – Mr. Meyer, I'm not going to admit [Exhibit 119] until you complete your – until the witness completes his testimony about it so I can make sure that there are no errors or mistakes in it.

(*Id.* at 84.) The Court allowed Cottonwood to use Exhibit 119 during its questioning of its expert witness. (*Id.*) The Court declined to admit Exhibit 119, however, due to concerns raised by BSWSD regarding its completeness. (*Id.*)

The jury returned a verdict in favor of BSWSD. (Doc. 142.) Cottonwood moved for a new trial, claiming, among other things, that BSWSD had presented false evidence at trial. (Doc. 173.) The Court denied Cottonwood's motion. (Doc. 198.) Cottonwood appealed issues related to the Court's summary judgment orders and jury instructions. (Doc. 210.) The Ninth Circuit affirmed. *See Cottonwood Evn't L. Ctr. v. Edwards*, 86 F.4th 1255, 1264 (9th Cir. 2023). Cottonwood petitioned for rehearing en banc, and that petition was denied. *Cottonwood Evn't L. Ctr. v. Edwards*, No. 22-36015, 2024 U.S. App. LEXIS 674 (9th Cir. Jan. 10, 2024).

Cottonwood sought relief tangential to the above litigation in other venues. Cottonwood sued BSWSD and its former general manager, Ron Edwards, and the Montana Department of Environmental Quality ("DEQ") in Montana state district court. (*See* Doc. 238-1.) The Montana state district court dismissed claims against BSWSD and Edwards and granted summary judgment to DEQ. (*See* Doc. 238-2; Doc. 238-3.) Cottonwood also filed administrative complaints with DEQ, and the United States Environmental Protection Agency ("EPA") related to the above

litigation. DEQ declined to pursue Cottonwood's claims as "evidence did not support the allegation the Ponds were leaking in excess of the design standard; or that the Golf Course is being over irrigated." (Doc. 238-4.) The EPA also declined to pursue Cottonwood's claims stating that there were "no ongoing investigations regarding this matter" and "the information cited in the portion of the email exchange excerpted in the court's order has not resulted in the EPA changing the conclusions and recommendations in its February 8, 2024 NPDES Inspection Report." (Doc. 238-5 at 7.)

Cottonwood now alleges that BSWSD presented false evidence at the 2022 trial. (*See* Doc. 236.) Cottonwood also has initiated a separate civil action alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), against Edwards and BSWSD's counsel, Jonathan Rauchway. (*See* Doc. 238-6.) Cottonwood raises claims in its civil RICO action that relate to Cottonwood's allegations in the instant matter. (*Id.*)

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) allows a court to relieve a party from a final judgment if the opposing party committed fraud. Fraud on the court typically involves "fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2022). A high standard exists to

establish a fraud on the court claim. A party must show "newly discovered" misconduct that qualifies as "egregious." *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017); *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1132–34 (9th Cir. 2022). The complaining party must show misconduct through clear and convincing evidence. *United States v. Stonehill*, 660 F.3d 415, 443–44 (9th Cir. 2011).

## DISCUSSION

### I.    Motion to Vacate

Cottonwood presents two different theories on how BSWSD committed fraud on the court. The Court will address each in turn. Cottonwood argues first in its brief in support that BSWSD falsified data regarding how much water BSWSD exported for irrigation to Spanish Peaks and the Yellowstone Club in 2020. This export data affected the leakage rate that Cottonwood's expert presented to the jury. (Doc. 236.) Cottonwood also presents a new theory of fraud related to the water export data contained in Excel spreadsheets in Exhibit 112 and Exhibit 113.

BSWSD did not falsify data. BSWSD recorded data regarding water exported from its holding pond to neighboring golf courses for irrigation. BSWSD presented evidence at trial that Cottonwood incorrectly calculated leakage rates when Cottonwood failed to account for water exported for irrigation to golf courses at Spanish Peaks and the Yellowstone Club. (Doc. 160 at 69–72.) The

meter used to monitor the volume of water that BSWSD exported to Spanish Peaks and the Yellowstone Club was fully operational. BSWSD recorded the irrigation export data. The recorded data supported the evidence BSWSD presented at trial. (Doc. 238-7, ¶¶ 6–10; *see also* Doc. 160 at 65–71.)

Cottonwood possessed this data from BSWSD and included it in its Trial Exhibit 112. (*See* Cottonwood's Trial Exhibit 112; *see also* Doc. 238-7 at 18–20.) Cottonwood confuses the meter that measured the exports to Spanish Peaks and the Yellowstone Club with a meter on the South Loop that measured exports to the Meadow Village Golf Course. Flooding in the area in 2020 temporarily disabled the meter recording exports to the Meadow Village Golf Course. (Doc. 238-7, ¶¶4–10.) BSWSD estimated the volume of water measured by the South Loop meter during the outage in 2020. BSWSD used none of this estimated data of irrigation water exported to the Meadow Village Golf Course in 2020 at trial to rebut Cottonwood's leakage data. (*Id.*; *see also* Doc. 159; Doc. 160.)

Cottonwood presents a new theory in its reply brief that BSWSD provided falsified data via an Excel spreadsheet tracking the volume of water exported to Spanish Peaks and Yellowstone Club during the 2020 non-irrigation season. (Doc. 239.) Cottonwood points to two spreadsheets, Exhibit 112 and Exhibit 119, one that it calls "real," and one that it calls "fake." (*Id.* at 3; *see also* Doc. 240 at 44–47.) Cottonwood contends that the real spreadsheet, Exhibit 119, shows that

6

BSWSD exported 3.474 million gallons of water to Spanish Peaks during the 2020 non-irrigation season. (*Id.*) The alleged real spreadsheet, Exhibit 119, indicates that BSWSD exported no water to Spanish Peaks after November 4, 2020. (*Id.* at 4.) Cottonwood claims the second spreadsheet, Exhibit 112, shows falsified export data to Spanish Peaks and Yellowstone Club after November 4, 2020, indicating that BSWSD exported 12.06 million gallons of water to Spanish Peaks and Yellowstone Club. (*Id.* at 4–6.)

Cottonwood is again mistaken. Cottonwood identified three spreadsheets as trial exhibits. The spreadsheets are nearly identical. The difference between each spreadsheet is temporal. Each subsequent spreadsheet corresponds to a specific date and the data in each spreadsheet is updated with new data. The Court admitted two of the spreadsheets at trial, Exhibit 112 and Exhibit 113, upon Cottonwood's motion. (Doc. 145.) BSWSD provided these two spreadsheets to Cottonwood during discovery. An examination of the trial transcript confirms the timeline. The Court asked the parties at the pre-trial conference whether any evidentiary issues needed to be discussed:

> COTTONWOOD: Your Honor, there is one issue. We had filed two exhibits and they are nearly identical.

> THE COURT: Who filed them?

> COTTONWOOD: Plaintiffs filed *two exhibits, Numbers 112 and 113, and those are nearly identical. They're*

*Excel spreadsheets.* And we had intended to submit the
different Excel spreadsheet that was provided to us. So we –

\*      \*      \*

THE COURT: What do you mean? Who gave you this? Is
this your expert?

COTTONWOOD: No, no. This was obtained during
discovery. It was provided to us by the defendants.

(Doc. 159 at 11.) Cottonwood confirmed that it filed Exhibit 112 and Exhibit 113

with the Court. (*Id.*) Cottonwood further confirmed that BSWSD provided Exhibit

112 and Exhibit 113 "during discovery." (*Id.*)

BSWSD objected to the introduction of Cottonwood's new exhibit, Exhibit

119, on the ground that BSWSD had not had sufficient time to verify its accuracy:

BSWSD: My understanding of these is that
*they're datasets that the district maintains that are updated
periodically.* And there were two different versions of it,
which plaintiffs listed on their exhibit list [Exhibit 112 and Exhibit 113],
which we've now had a chance to look at it and agree. We'll stipulate those
should come into evidence.
This other one [Exhibit 119], I don't know what it is. I don't
know if it was a draft. I don't know if it was incomplete.

(*Id.* at 12) (emphasis added). The data contained in 119 appears to be incomplete

as it shows no water exports from BSWSD for irrigation to Spanish Peaks and

Yellowstone Club after November 4, 2020. (*See* Doc. 239 at 4.). As was explained

at trial and in BSWSD's briefing, however, BSWSD periodically updates the data

in the spreadsheet regarding water exported for irrigation. (Doc. 159 at 12; Doc.

8

242-1 at 5.) Cottonwood apparently used Exhibit 119 to develop a water budget (Exhibit 111) prepared by Cottonwood's expert. Cottonwood's expert, in turn, used Exhibit 111 to calculate the volume of water that allegedly leaked into the West Fork Gallatin River from the BSWSD holding pond. (*See* Cottonwood's Trial Exhibit 111.)

The parties again discussed the issue of water export data and Exhibit 119 later in the day:

> COTTONWOOD: Your Honor, in order to discuss the water budget in 111, we're going to need Exhibit 119, which we discussed earlier.
>
> THE COURT: What is 119?
>
> COTTONWOOD: 119 is the export data provided to us by the sewer district.

(Doc. 159 at 80–81.) BSWSD reasserted its objection to Exhibit 119 due to its inability to verify its completeness:

> BSWSD: If this is the entirety of a document we produced, we wouldn't have an objection to it. But it's a big document, a big spreadsheet, and I haven't had time to look at it. *I can represent to the Court that all of the data in 119, if it's the complete version of it, is also in the Exhibits 112 and 113, that are already in evidence on plaintiff's exhibit list.*
>
> So our objection is that this was never listed as an expert on their trial exhibit list, and we haven't had a chance to go through it and make sure that it's complete and correct.

9

(*Id.* at 81.) Cottonwood explained its need to admit Exhibit 119 despite its earlier

admission of Exhibit 112 and Exhibit 113:

> COTTONWOOD: I don't believe that [Exhibit 112 and Exhibit 113] have all of the variables that were used in Mr. Aley's 2020 water budget, Your Honor.
>
> THE COURT: The 2020 water budget is Exhibit 111?
>
> COTTONWOOD: That is the budget [Mr. Aley] put together, but [Mr. Aley] used Big Sky's water numbers to create that budget.
>
> THE COURT: Well, where are those numbers? In 119?
>
> COTTONWOOD: Yes, 119 and 112.

(*Id.* at 81–82.) Cottonwood failed to disclose what "variables" Exhibit 112 and

Exhibit 113 lacked that Cottonwood believed were contained in Exhibit 119:

> THE COURT: Exhibit 112 and 113 are the same document?
>
> COTTONWOOD: Nearly the exact same. One is updated by a few months with a couple new –
>
> THE COURT: Which one is supposed to be 119?
>
> COTTONWOOD: 113 was supposed to be 112; 119 was supposed to be 113.
>
> *     *     *
>
> THE COURT: So 113 is for what year?
>
> COTTONWOOD: 113 covers many. It just doesn't cover all the variables.

10

THE COURT: And 119 differs how?

COTTONWOOD: It covers variables that are not included
in 112 -- 113.

THE COURT: So, Counsel, you don't know what information differs? Is
that the concern here?

BSWSD: I only have that concern because I
haven't had a chance to look at what this document is. I can
tell you that this is a spreadsheet that's just added to. So
if -- well, *whatever data is in 119, if it were a complete
copy, would be in 112 and 113. 119 is the February version,
112 is the July version, and 113 is the October version of the
same spreadsheet, or it should be anyway.*

(*Id.* at 82–83) (emphasis added). The Court allowed Cottonwood to use Exhibit

119 to questions its expert, but did not admit Exhibit 119:

THE COURT: Mr. Rauchway, I want to make sure you're
clear on my order. I'm going to allow Mr. Meyer to begin
questioning using Exhibit 119. If you believe any information
is incorrect or differs or hadn't been disclosed, please raise
an objection. If necessary, I will order the testimony struck.
*I will not admit [Exhibit 119] -- Mr. Meyer, I'm not
going to admit [Exhibit 119] until you complete your -- until
the witness completes his testimony about it so I can make sure
that there are no errors or mistakes on it.*

(*Id.* at 83) (emphasis added).

Cottonwood proceeded with direct examination of its expert, Thomas Aley.

Cottonwood and Aley discussed the water budget in Exhibit 111 calculated by

Aley based on BSWSD's water export data recorded in Exhibit 119. The data in

Exhibit 119 did not include updated data of water exported by BSWSD from its

11

holding pond to the Yellowstone Club and Spanish Peaks that occurred after

November 4, 2020, during the non-irrigation season:

> COTTONWOOD: Okay. And tell us about the change in storage.

> MR. ALEY: Change in storage is line 5. December 15, there was --
> December 15, 2019, there was 6.17 million gallons; December 12,
> 2020, 18.51 million gallons. So the difference between the two
> is 12.34. That shows the amount of water that has gone into
> storage [. . .] The total change in storage is lines 5 plus 6 plus 7.
> So that's 12.34 million gallons.
> Next is water exports. The exports, this is all Big
> Sky Water and Sewer District data. Irrigation water to the
> north loop of the Meadow Village Golf Course was 97.294 million
> gallons during the year.
> Line 10 is irrigation water that went to the south
> loop of the golf course. Again, the sewer district data, it
> was 19.166 million.
> *Export of effluent to Yellowstone Club and Spanish*
> *Peak, this is another area that the sewage is going to -- or*
> *the -- yes, the sewage is going to. That's 16.212 million*
> *gallons in the year.*
> . . .

*     *     *

> COTTONWOOD: Mr. Aley, have you seen this [Exhibit 113] before?

> MR. ALEY: Yes.

> COTTONWOOD: What is this?

> MR. ALEY: This is part of the Excel data sheets giving data by
> columns and by dates. This is data for 2018.

*     *     *

> COTTONWOOD: So that table there, go over to 2020, at the bottom there,
> it says, "159.29." Can we go back to Exhibit [1]11? Do those

12

numbers add up there?
They don't add up. In here, it says,
"171.32" for 2020. So the numbers don't quite appear to --
don't quite appear to match up.
Can you tell me where you got that [1]71.32 number
from?

*       *       *

MR. ALEY: You will see in the box on the upper
left corner, 2020 -- oops, don't blow it up too much. 171.32
is on the bottom. Yearly total, line 2020 -- yes, 171.32
million gallons. So that's where that number comes from.

(*Id.* at 89–93) (emphasis added).

BSWSD asked Cottonwood's expert on cross-examination about the source

that Cottonwood used to determine the volume of the effluent exports to the

Yellowstone Club and Spanish Peaks. Aley admitted that his water budget (Exhibit

111) neglected to include water export data to the Yellowstone Club and Spanish

Peaks during the non-irrigation season displayed in Exhibit 112 and Exhibit 113.

Aley's mistake in not including this data resulted in inaccurate water leakage data:

BSWSD: *You realize, Mr. Aley, that this data [Exhibit 119] only covers the*
*irrigation season, which in 2020 was May 4th to October 12th?*
*Do you realize that?*

MR. ALEY: Yes.

BSWSD: *But you didn't realize that the district pumps water from*
*its storage ponds to Yellowstone and Spanish Peaks all year*
*round, not just during the irrigation season. You didn't*
*realize that, did you?*

13

MR. ALEY: We took that into account in some of the revised sheets. We did catch that.

BSWSD: You made a mistake?

MR. ALEY: Yep.

BSWSD: Let's look at the same exhibit, actually. *Just the tab YC/SP flows*. This is the spreadsheet you worked from right?

\*    \*    \*

MR. ALEY: Yes.

BSWSD: Did you look at this tab in the spreadsheet when you did your water budget?

MR. ALEY: Let's see. We may -- I think we picked this one up in our revised one, but it was not in the one we're looking at now, if I'm correct on that. Yes, we did discover that there was another tab that covered exports during the non-irrigation season.

BSWSD: Let's take a look at that. Do you see that column that says, "Yellowstone, Pump Station 1, millions of gallons"? And you see there that the district started pumping to Yellowstone in January of 2020, and continued all the way through March of 2020?

MR. ALEY: Yes.

BSWSD: And none of that is during the irrigation season, is it, Mr. Aley?

MR. ALEY: No that's non-irrigation.

BSWSD: And none of those volumes are captured in your water budget, are they?

MR. ALEY: No.

14

BSWSD: And moving over to Spanish Peaks column, you will see that *district pumped from the ponds to Spanish Peaks starting in late October of 2020, and continuing all the way until just before Christmas*. None of that's during irrigation season, is it?

MR. ALEY: That's correct.

BSWSD: And none of those volumes are captured in your water budget, are they, Mr. Aley?

MR. ALEY: *They were captured in the revised one [Exhibit 112], but they were not captured in the one [Exhibit 119] we're looking at here*.

BSWSD: These aren't small amounts, are they, Mr. Aley?

MR. ALEY: No.

BSWSD: If you just look at the volume pumped to Yellowstone from January to March of 2020, and you can see that the Excel program handily adds them up for us. If you look in the lower right-hand corner, that's 18.097 million gallons that you missed. Isn't that right, Mr. Aley?

MR. ALEY: That's what the number shows.

BSWSD: Okay. And that nearly wipes out the entirety of the opinion you just gave to this jury that 21 million gallons above DEQ standard are leaking from these ponds, doesn't it?

MR. ALEY: We caught that error in our revised ones, but that is the error.

(*Id.* at 129–32) (emphasis added). Cottonwood's expert conceded that

Cottonwood's failure to include export data for irrigation from the holding pond to

the golf courses at Yellowstone Club and Spanish Peaks resulted in errors in

Cottonwood's water budget in Exhibit 111:

> BSWSD: Yes. Line 11 in your water budget where it says 16.212
> million gallons, that's wrong, isn't it?
>
> MR. ALEY: Yes, it's wrong.
>
> BSWSD: And that makes your total of 148.55 gallons, that's wrong
> too, isn't it?
>
> MR. ALEY: Yes.
>
> BSWSD: And your 21.12 million gallons, that's wrong also, isn't
> it?
>
> MR. ALEY: That it is.

(*Id.* at 132.) This testimony refutes Cottonwood's theory of fraud. Cottonwood

made no effort on redirect examination of Mr. Aley to address the issue of the

alleged hidden tab. (*Id.* at 132–33.) Cottonwood instead limited its redirect

examination of Mr. Aley to five questions about BSWSD's aeration pond. (*Id.*)

The questioning of BSWSD's witness on the second day of trial further

disproves Cottonwood's theory of fraud. BSWSD questioned its former general

manager Ron Edwards about exports to the Yellowstone Club and Spanish Peaks.

(Doc. 160 at 70.) BSWSD asked Edwards about data in Exhibit 112:

> BSWSD: Okay. So we can accept those numbers for this purpose.
> And then line 11, that's the amount of water pumped
> to Yellowstone and Spanish Peaks for -- should be for the
> entire year; right?

16

MR. EDWARDS: It should be. *That's just the irrigation season.*

BSWSD: The number Mr. Aley has is just the irrigation season?

MR. EDWARDS: Yes.

BSWSD: All right. So let's go back to the tab, YCSP flows.
Okay. Now, the Yellowstone Pump Station 1 column,
that shows the district's pumping from the storage ponds to
Yellowstone in 2020, before irrigation season started; right?

MR. EDWARDS: Yes.

BSWSD: [Excel] will add this up for us if we
highlight it. So can you tell us what the total amount in
millions of gallons that were pumped from the storage ponds to
the Yellowstone Club in 2020, before irrigation season started?

MR. EDWARDS: It's 18.097. Right below the tab you can see the total
that's shown there.

*        *        *

BSWSD: Okay. And if we go back to the top of the spreadsheet,
you'll see there's another column for Spanish Peaks Pump
Station 1. That shows the district pumping to Spanish Peaks
from its storage ponds after irrigation season ended in 2020;
right?

MR. EDWARDS: Yes.

BSWSD: All right. So let's highlight that and see what we come
up with.

MR. EDWARDS: That total is 12.067.

(*Id.* at 69–70) (emphasis added). Cottonwood cannot claim the 12.067 million gallons represents a fraudulent number when witnesses discussed that number at trial. (*Compare* Doc. 239 at 4–6; Doc. 160 at 69–70.) Cottonwood declined to question Edwards about this number on cross-examination. (*See* Doc. 160 at 73–81.) In fact, Cottonwood asked no questions of Edwards on cross-examination regarding BSWSD's export of water from the holding pond for irrigation of the golf courses at Spanish Peaks and the Yellowstone Club. (*Id.*)

The trial testimony disproves Cottonwood's alleged fraud. The trial testimony can be summarized as follows. BSWSD updated the Excel spreadsheet at issue over time as it exported water for irrigation to the Yellowstone Club and Spanish Peaks. (Doc. 159 at 12.) Some of these exports occurred during the non-irrigation season. (*See* Cottonwood's Exhibit 112; Cottonwood's Exhibit 113.) Cottonwood identified three spreadsheet versions as trial: Exhibit 112, Exhibit 113, and Exhibit 119. The Court admitted the spreadsheets in Exhibit 112 and Exhibit 113 at trial. (Doc. 145.) BSWSD's counsel explained each version of the spreadsheets at trial: "119 is the February [2021] version, 112 is the July [2021] version, and 113 is the October [2021] version of the same spreadsheet." (Doc. 159 at 83.)

No one falsified the data contained in the spreadsheets. As was explained at trial and in BSWSD's briefing, BSWSD periodically updates the water export data

in the spreadsheet. (Doc. 159 at 12; Doc. 242-1 at 5.) Cottonwood's alleged real spreadsheet, Exhibit 119, simply had not been updated by BSWSD with all the water export data from 2020. Cottonwood possessed the updated spreadsheets (Exhibit 112) and had it admitted at trial. (*See* Doc. 240 at 44–47; Cottonwood's Trial Exhibit 112; Cottonwood's Trial Exhibit 113.) Cottonwood now derides as fake its own Exhibit 112.

The Court finally addresses Cottonwood's claim of hidden tabs contained in its Exhibit 112 and Exhibit 113. The Court has examined Exhibit 112 and Exhibit 113. Each spreadsheet contains over 50 tabs. (*See* Cottonwood's Exhibit 112; Cottonwood's Exhibit 113.) Cottonwood presented a screenshot of its Exhibit 119 in its Reply Brief in support of this motion. (Doc. 239 at 4.) The screenshot of Exhibit 119 contains a tab labeled "YC SP Flows 2019-20" (*Id.*) Exhibit 112 and Exhibit 113 contain tabs labeled "YC SP Flows 2019-20." (*See* Cottonwood's Trial Exhibit 112; Cottonwood's Trial Exhibit 113.) Not all the tabs are viewable upon opening, including the tab labeled "YC SP Flows 2019-20."



(Cottonwood's Trial Exhibit 112) (emphasis added).



(Cottonwood's Trial Exhibit 113) (emphasis added). Right-clicking on the tabs allows the user to see and select a list of all the tabs.



(Cottonwood's Trial Exhibit 112) (emphasis added).



(Cottonwood's Trial Exhibit 113) (emphasis added). The YC SP Flows 2019-20

tab in both exhibits contains export data from after November 4, 2020.



(Cottonwood's Trial Exhibit 112) (emphasis added).



(Cottonwood's Trial Exhibit 113) (emphasis added).

Cottonwood's allegations of fraud fall short. Cottonwood bases BSWSD's alleged fraud on a spreadsheet (Exhibit 119) that was not admitted into evidence at trial. (*See* Doc. 145; *see also* Doc. 159 at 84; Doc. 239 at 3–7; Doc. 240 at 44–47.) The jury never saw Exhibit 119. The Court finds unpersuasive Cottonwood's allegations that BSWSD intentionally hid the YC SP Flows 2019-20 tab on Exhibit 112 and Exhibit 113. Cottonwood's expert conceded at trial that Cottonwood knew about the alleged fraudulent export data in Exhibit 112: "we did discover that there was another tab that covered exports during the non-irrigation season." (*See* Doc. 159 at 123, 124–25, 127, 129, 130.)

The record also indicates that BSWSD disclosed Exhibit 112 to Cottonwood 10 months before trial on July 26, 2021. (*See* Doc. 242-1 at 7.) Cottonwood's counsel nevertheless insisted at oral argument on this motion that "[t]he first time we saw [Exhibit 112] was during trial." (Doc. 265 at 3.) Cottonwood's counsel reiterated this accusation multiple times, "[w]e did not know that there was a spreadsheet saying that the Big Sky Water and Sewer District exported 12 million gallons to Spanish Peaks until the day of trial." (*Id.*) Cottonwood's counsel again stated at oral argument on this motion that "we didn't know this document even existed until they told us how to find the hidden document in their sur-reply brief. Two months ago was [the] first time we were ever able to access this document." (*Id.* at 4.) Cottonwood's counsel eventually admitted that it had received the water

export data in Exhibit 112 10 months before trial in July 2021. (*Id*. at 5.) This concession contradicted Cottonwood's earlier claim that it had not received the updated data until the day before trial in April 2022. (*Id.*)

Cottonwood also accuses BSWSD of not having provided the spreadsheet data to the Court after trial. (Doc. 239 at 7.) The trial testimony contradicts Cottonwood. (*See* Doc. 159.) Cottonwood admitted the spreadsheet in Exhibit 112 at trial. (*See id.*) The docket entry that Cottonwood cites to support its accusation also states that "[t]he District separately . . . mail[ed] the clerk a USB drive containing native files for Exhibits 112, 113, 201, and 227, as required by L.R. 5.1(b)(4)." (Doc. 152 at 2; *see also* Doc. 154 at 2.) The Court rejects Cottonwood's version of this alleged dispute. No "intentional, material misrepresentation directly aimed at the court" exists. *Trendsettah USA, Inc.*, 31 F.4th at 1134.

Cottonwood accuses BSWSD of "undermin[ing] the judicial process." (Doc. 239 at 10.) The Court disagrees. Our court system must remain grounded in a search for the truth and to accuse opposing counsel of being untruthful represents a serious accusation. Such accusations should be made only when there exists evidence of "newly discovered" misconduct that is both "egregious" and supported by facts. *Sierra Pac. Indus., Inc.*, 862 F.3d at 1168; *Trendsettah USA, Inc.*, 31 F.4th at 1132–34. The record before the Court remains devoid of anything resembling a credible claim of misconduct by BSWSD. Cottonwood fails to support its baseless fraud

24

allegations with any evidence that approaches the clear and convincing standard that the Court must apply. *Stonehill*, 660 F.3d at 44.

## II.    Sanctions

### A. Attorney Fees

BSWSD requests that the Court order Cottonwood to pay attorneys' fees and place a filing restriction on Cottonwood related to this litigation. (Doc. 238 at 18–24.) Courts possess inherent authority to impose sanctions. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). A court also may impose attorney fees under 28 U.S.C. § 1927. A court must find "bad faith" or "reckless conduct" to impose sanctions. *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).  Instances "when the losing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons" support the imposition of sanctions.  *Fink*, 239 F.3d at 991 (9th Cir. 2001) (internal quotations and citation omitted).

Cottonwood persists in pushing a baseless fraud theory that has been debunked multiple times three years after trial. Cottonwood simply changes its theory when the facts fail to support the previous theory. (*Compare* Doc. 236 (falsifying water export data) to Doc. 239 (failing to disclose tabs on Excel spreadsheets).) Cottonwood also seeks to push this baseless theory through a civil RICO action related to this litigation. (*See* Doc. 238-6.) It appears that the same

25

theory of fraud supporting this motion underpins Cottonwood's civil RICO action. (*Id.*) Cottonwood's reckless misstatements and disregard of facts, combined with the relentless pursuit of an alleged theory of fraud that has been rebutted multiple times, warrant sanctions. The Court will award BSWSD $7,500.00 in attorneys' fees.

### B. Filing Restriction

Courts "have inherent power to control their dockets." *Atchison Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (internal quotations omitted). Courts may restrict "litigants with abusive and lengthy histories" from filing under 28 U.S.C. § 1651(a). *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). The Court finds such a measure appropriate in this case.

Cottonwood remains unwilling to accept the judgment. Cottonwood freely tried this case to a jury. The jury returned a defense verdict. (Doc. 157.) Cottonwood pushed its false evidence theory in moving for a new trial. (Doc. 172.) The Court denied that motion. (Doc. 198.) Cottonwood appealed to the Ninth Circuit on grounds unrelated to its false evidence theory. (Doc. 210.) Cottonwood's appeal was denied. *See Cottonwood Evn't L. Ctr. v. Edwards*, 86 F.4th 1255, 1264 (9th Cir. 2023). Cottonwood pursued collateral attacks on the Court's judgment in Montana state district court and with DEQ and the EPA based

on the same false evidence theory. (*See* Doc. 238-1; Doc. 238-2; Doc. 238-3; Doc. 238-4; Doc. 238-5; Doc. 238-10; Doc. 238-11.) Cottonwood's attacks failed. (*See* Doc. 238-1; Doc. 238-2; Doc. 238-3; Doc. 238-4; Doc. 238-5; Doc. 238-10; Doc. 238-11.)

Cottonwood now brings this motion three years after the Court entered judgment. Even though "certainty generally is illusion, and repose is not the destiny of man," finality in the law proves essential. Oliver Wendell Holmes, *The Path of the Law*, 10 Harv. L. Rev. 457, 465 (1897). Certainty is not an illusion here and repose is this issue's destiny. Judgment is entered and final. Cottonwood must seek leave of the Court to file any further motions in this case against BSWSD and its employees.

### III.    Motion for Mediation

Cottonwood filed a motion for mediation with Boyne Resorts ("Boyne") on June 20, 2025. (Doc. 262.) Boyne does not wish to participate in mediation currently. (*See* Doc. 263.) The Court will deny Cottonwood's motion.

### CONCLUSION

The Court finds that BSWSD did not commit fraud on the Court. Cottonwood's fraud allegations repeatedly have been disproven. The Court orders Cottonwood to pay $7,500.00 in attorneys' fees to BSWSD. Cottonwood must

seek leave from the Court before filing any additional motions in this case against BSWSD and its employees.

The Court finally would remind Cottonwood and its supporters that litigation takes place in an open and transparent court setting. After the hearing on this motion on Monday, June 9, 2025, an anonymous caller left a voicemail with the Court's Chambers encouraging the Court to "do a little homework on Excel." The Court welcomes and encourages citizens to observe and engage with the Court's docket. The Court reiterates the open and transparent setting in which litigation occurs. Anonymous voicemails do not constitute open and transparent communication. The Court also has done its homework on Excel in this case. Cottonwood knew of the tabs in Exhibit 112 and Exhibit 113 that contained the irrigation export data to Spanish Peaks and Yellowstone Club more than three years ago when it tried the case to a jury in 2022. (*See* Doc. 159 at 130.) Exhibit 119 contained the same tab. (Doc. 239 at 4.)

## ORDER

Accordingly, **it is ORDERED** that Cottonwood's Motion to Vacate (Doc. 235) is **DENIED**.

1. Cottonwood is ordered to pay $7,500.00 in attorneys' fees to BSWSD.

2. Cottonwood must seek leave of the Court before filing any additional motions in this case against BSWSD and its employees.

3.  Cottonwood's Motion to Strike (Doc. 243) is **DENIED**.

4.  Cottonwood's Motion for Hearing (Doc. 245) is **DENIED** as moot.

5.  BSWSD's Motion for Leave to File a Sur-Reply (Doc. 241) is **DENIED** as moot.

6.  Cottonwood's Motion for Mediation (Doc. 262) is **DENIED**.

DATED this 10th day of July, 2025.

_____
Brian Morris, Chief District Judge
United States District Court