## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, | CV-20-28-BU-BMM |
| Plaintiff, | |
| v. | ORDER ON TRIAL WITNESS TESTIMONY |
| BOYNE USA, INC., | |
| Defendants. | |

Plaintiff Cottonwood Environmental Law Center ("Cottonwood") seeks to introduce at trial testimony from the following potential witnesses: Ron Edwards, Mark Cunnane, Clint Nagel, Pat Simmons, Jack Landers, Jack Taylor, Kristin Gardner, and Chris Allen. (Doc. 305 at 14.) Cottonwood also seeks the testimony of Terry Campbell. (*Id.*) The Court will address the request for Campbell's testimony in a separate order. Defendant Boyne USA, Inc. ("Boyne") objects to Cottonwood calling the potential witnesses. (*Id*. at 18–21.)  The Court heard limited argument on this issue at the Final Pretrial Conference on November 3, 2025. (Doc. 302.)

The Court denies Cottonwood's request as to Edwards. Cottonwood may call Allen, Cunnane, and Gardner only under the condition that it retains them to testify

to their opinions. Cottonwood also may call Nagel and Simmons only, if necessary, as rebuttal witnesses. Cottonwood agreed to withdraw calling Landers and Taylor but reserved the right to seek to call them as rebuttal witnesses if Boyne raises an issue with the way Landers and Taylor collected water samples. (*See* Doc. 302.) The Court will not address Boyne's objections on Landers and Taylor at this point.

## BACKGROUND

Cottonwood filed suit on July 10, 2020, along with the Gallatin Wildlife Association and Montana Rivers, against Big Sky Water and Sewer District No. 363 ("District"). The Gallatin Wildlife Association and Montana Rivers have left the case as plaintiffs. Cottonwood alleges that the District indirectly discharged pollutants into the Gallatin River in violation of the Clean Water Act. (Doc. 1.) The Court granted Cottonwood leave to amend its complaint to add Boyne as a party on December 17, 2021. (Doc. 89 at 8–10.) After Cottonwood filed its amendment, the Court divided the action to address separately Cottonwood's claims against each party. (Doc. 118.) The jury found that Cottonwood had failed to prove that the District had violated the Clean Water Act in the first phase of the case. (Doc. 142.)

Cottonwood served its Rule 26(a)(1) initial disclosures for the second phase of the case on July 11, 2024. (Doc. 305 at 18.) Cottonwood's initial disclosures failed to list Edwards, Cunnane, Nagel, Simmons, Gardner, and Allen. (*Id*. at 18–19.)

Cottonwood seeks to compel the testimony of three non-experts for trial against Boyne. Edwards testified at trial in the first phase of this case in August 2021 before Boyne had been joined as a party. (Doc. 305 at 18.) Edwards served as the General Manager for the District at the time of the first trial. (*Id.*) Edwards recently has retired. (*Id.*) Nagel served in the role of Executive Director of the Gallatin Wildlife Association and Pat Simmons served in a lead role at Montana Rivers. (*Id.* at 15.)

Cottonwood also seeks to compel the testimony of three unretained expert witnesses. Gardner serves as the Executive Director of the Gallatin River Task Force. (*Id.* at 20.) Gardner studies the West Fork of the Gallatin River. (*Id.*) Gardner previously served as a retained expert for the District in the first trial. Gardner sat for a deposition, but did not testify at the first trial. (Doc. 48-10.) The District also retained Cunnane as an expert witness for the first trial. (Doc. 305 at 18.) Cunnane testified at the first trial. (Doc. 137.) Cunnane now has retired. (Doc. 305 at 18.) Allen is a scientist and academic from the Montana State University of Bozeman. Allen conducted a study of the Upper Gallatin in 2020. (Doc. 305 at 15.) Cottonwood alleges that Allen also previously sat for a deposition before the first trial. (*Id.*) Cottonwood admitted at the Final Pretrial Conference on November 3, 2025, that Gardner and Allen are unwilling to testify voluntarily.

3

## LEGAL STANDARD

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure requires a party to disclose the identity of any witness that the party plans to use at trial to present expert testimony. The expert disclosure "must be accompanied by a written report" that contains "a complete statement of all opinions the witness will express." Fed. R. Civ. P. 26(a)(2)(B). Parties must make disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) also authorizes a court to impose other appropriate sanctions such as the payment of reasonable expenses "[i]n addition to or instead of" excluding the evidence. Fed. R. Civ. P. 37(c)(1); *see also Plentyhawk v. Sheikh*, CV 14-44-BLG-SPW, 2016 U.S. Dist. LEXIS 70815, at *11 (D. Mont. May 31, 2016).

## DISCUSSION

### I.    Cottonwood's Proposed Non-Expert Witnesses

Boyne objects to the testimony of Edwards. (Doc. 305 at 18.)  Cottonwood untimely disclosed Edwards as a witness in violation of Rule 26(a)(2)(A). Cottonwood fails to meet its burden of showing a substantial justification or harmlessness. Edwards served as a witness for the District in the first phase of the

4

case. Edwards's testimony involved information relevant to Cottonwood's claims against the District regarding its alleged indirect discharge of pollutants into the Gallatin River from the District's holding pond. Edward's testimony in this phase of the case likely would raise issues unrelated to Boyne's alleged overirrigation of the Meadow Village Golf Course. Boyne had no opportunity to depose or seek discovery from Edwards on the issue of overirrigation. Edwards has since retired from his role at the District. As an appropriate sanction for Cottonwood's untimely disclosure, Cottonwood may not compel Edwards to testify or read his prior testimony at trial. Fed. R. Civ. P. 37(c)(1).

Cottonwood asserts that it will only call Nagel and Simmons if Boyne raises at trial the fact that the Gallatin Wildlife Association and Montana Rivers are no longer parties in this case. (*Id*. at 15.) The Court may glean from this assertion only that their testimony would prove less relevant to the issue at hand. The Court will allow Cottonwood to call Nagel and Simmons as rebuttal witnesses in the event that Boyne raises the fact that Gallatin Wildlife Association and Montana Rivers no longer are parties to this dispute.

## II.    Cottonwood's Unretained Expert Witnesses

Cottonwood seeks to compel the testimony of Gardner, Cunnane, and Allen. (Doc. 305 at 15.) Cottonwood intends to call Cunnane to discuss his opinions on a report involving some information related to the claims that Boyne has

overirrigated the Golf Course. (*Id*.) Cottonwood seems to seek to call Cunnane as a witness to provide opinions more appropriate for a retained expert witness than from a fact witness. Cottonwood has not retained Cunnane as an expert witness. The Court will apply Cottonwood's justifications for compelling testimony related to Gardner and Allen the same as for Cunnane.

Cottonwood argues that it was not required to disclose Gardner, Allen, and Cunnane in its expert disclosures because their testimony properly can be categorized as opinions from non-retained experts. (Doc. 305 at 15.) Cottonwood directs the Court to the principles distilled in *Norris v. Fritz*, 270 P.3d 79 (Mont. 2012), as support for its contentions. (*Id*.) Cottonwood alternatively argues that Boyne will suffer no prejudice or undue surprise if the Court allows the testimony. (*Id*.)

*Norris* involved the question of whether a Montana state district court erred when it barred the testimony of a hybrid witness on the applicable standard of care in a medical malpractice suit. *Id*. at 81.  After determining that the Montana Rule related to expert disclosure mirrored the Federal Rule, the Montana Supreme Court considered the Federal Advisory Committee's comments on the limitations of Federal Rule of Civil Procedure 26(b)(4) in terms of unretained expert witnesses. *Id*. at 83. "The rule 'does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with

6

respect to transactions or occurrences that are part of the subject matter of the lawsuit.'" *Id.* (citing Fed. R. Civ. P. Comments (1970)). The Montana Supreme Court concluded from the comments that the rule "simply does not apply to non-retained experts." *Id.* "A non-retained expert typically will be a hybrid witness . . . [who] possesses personal knowledge of factual events relevant to the case [and] . . . specialized training that allows him to formulate expert opinions regarding those factual events." *Id. Norris* allowed the non-retained treating physician to offer opinions regarding the standards of care and whether the defendants had violated those standards of care. *Id.*

The District Court of Montana similarly dealt with the question of a plaintiff's motion to exclude a hybrid witness's testimony in *Tarter v. Throne Law Office, P.C.*, 2019 WL 609337 (D. Mont. Feb. 13, 2019). The defendant in *Tarter* previously had disclosed the expert as a fact witness but not as a retained expert. *Id.* at *2. The defendant sought the expert's testimony to provide opinions on the applicable standard of care in an attorney malpractice suit. *Id.* at *1. The court considered "the nature of the expert's testimony." *Id.* at *3 (quoting *Cantu v. United States*, 2015 WL 12743881, at *4 (C.D. Cal. Apr. 6, 2015)).

The court distinguished between testimony offered by an expert "limited to his or her percipient knowledge i.e. knowledge and opinions formed at the time an

earlier evaluation or report was made" and testimony that "relies on information beyond [] percipient knowledge." *Id*. The court concluded that the proposed expert testimony violated Federal Rule of Civil Procedure 26 because the expert "intend[ed] to testify on a number of topics outside his personal knowledge . . . and established after the events at issue." *Id.* at *4. The defendant also demonstrated, however, a substantial justification for the late disclosure. *Id*. at *6.

For example, the defendant had "timely serve[d] a Rule 26(a)(1)(C) report containing the information" potentially discussed in the testimony so the plaintiff had notice of the expert's opinions before the close of discovery. *Id.* The court limited the expert's testimony to "what he witnessed or experienced" regarding the issues at dispute. *Id*.

The nature of the testimony Cottonwood seeks to compel presents a mix of personal and expert knowledge. Allen, Cunnane, and Gardner would testify on topics related to their personal knowledge of the Gallatin River. *Tarter*, 2015 WL 12743881, at *4.  Gardner conducted research on the Gallatin River in her role as the Executive Director of the Gallatin Water Task Force. Cottonwood also alleged in the Final Pretrial Conference that Gardner conducted remediation work of the Chapel Springs area related to wastewater discharge. Cottonwood contends that Chapel Spring could be a point source of discharge from the Meadow Village Golf Course. Allen similarly conducted an analysis of the Upper Gallatin in 2020.

8

Cunnane collected samplings of water effluent around the Gallatin region. Allen, Cunnane, and Gardner have some personal knowledge of facts pertinent to the current issue of Boyne's alleged overirrigation of the Meadow Village Golf Course.

Cottonwood also seeks the testimony of these witnesses to provide expert opinions. Gardner potentially would testify to her opinions on whether "the Meadow Village Course should not be irrigated without first considering the nitrogen concentration in the effluent." (*Id*. at 20.) Allen would testify to his conclusions in his 2020 analysis identifying Chapel Spring as a "known point source." (*Id*.) Cunnane would testify to his conclusions in a previous report. (*Id*. at 15.) Gardner, Cunnane, Allen would "testify on a number of topics outside [their] personal knowledge . . . and [potentially] established after the events at issue." *Tarter*, 2015 WL 12743881 at *4. This testimony would require Gardner, Cunnane, and Allen to "rel[y] on information beyond [their] percipient knowledge." *Id.* at *3. Gardner, Cunnane, and Allen properly can be categorized as hybrid witnesses.

Cottonwood violated Rule 26 because it failed to disclose Gardner, Cunnane, and Allen as expert witnesses and file the required expert report containing the information that the experts would potentially discuss during their

testimony. *Id*. at *6. Boyne had no notice of the experts' opinions before the close of discovery. *Id*. Cunnane previously may have conducted a report with information on the irrigation of the Meadow Village Golf Course but the District had retained Cunnane as its expert for that report. (Docs. 152-16, 152-17, 152-36.)

Cottonwood cannot demonstrate harmlessness or a substantial justification for the late disclosures. Cottonwood alleges that Boyne had notice of the experts' testimony. (Doc. 305 at 15.) The Court disagrees. Gardner sat for a deposition related to the topic of pollution of the Gallatin River in the first phase of the case. (Doc. 48-10.) The Court previously admitted Gardner's published research as exhibits in the case. (Docs. 48-7 and 48-8.) Cottonwood also seeks Gardner's testimony to discuss some of her experience on her remediation work of the Chapel Springs area. These facts fail to indicate that Boyne had notice of Gardner's opinions on her remediation work or that Gardner had personal knowledge of the alleged overirrigation of the Meadow Village Golf Course. *Tarter*, 2015 WL 12743881at *6. Cottonwood cannot compel her testimony as a hybrid witness.

Cottonwood also cannot compel the testimony of Allen and Cunnane. Cunnane previously created a report that described some facts pertinent to the current issue of this case as a retained expert for the District. (Doc. 305 at 15.) Allen also allegedly provided deposition testimony on the current issue in this case.

10

(*Id.*) The Court lacks sufficient knowledge, however, whether Boyne had notice of this alleged deposition or what specific knowledge Allen discussed regarding the issues at dispute. Allen has published research on the pollution in the Gallatin River. (*Id.*) Even so, Allen remains unwilling to testify.

Cottonwood suggested at the Final Pretrial Conference that the Court may allow it to read any depositions or compiled reports of the previous witnesses. The Court disagrees. Parties cannot circumvent the principles of Rule 45 by reading previous deposition or trial testimony without compensation to the potential witness or first demonstrating necessity. Such an attempt violates the intellectual property that experts have developed over the course of their research and study. As the Notes of the Advisory Committee on the Federal Rules of Civil Procedure explained in 1991:

> A growing problem has been the use of the subpoenas to compel the giving of evidence and information by unretained experts. Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services. Arguably the compulsion to testify can be regarded as a "taking" of intellectual property. The rule establishes the right of such persons to withhold their expertise, at least unless the party seeking it makes the kind of showing required for a conditional denial of a motion to quash . . .

Fed. R. Civ. P. 45 (Adv. Comm. N. 1991 Am.) (citations omitted).

11

A court possesses the discretion to consider the following factors regarding a conditional denial of a motion to quash: "the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and the degree to which the witness is able to show that he has been oppressed by having continually to testify . . ." *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976).

The Court lacks sufficient information or knowledge on whether Cottonwood has subpoenaed Allen and Cunnane. Boyne has stated that Gardner has yet to be subpoenaed. The Court likely would deny Cottonwood's potential subpoenas because the experts cannot be compelled to testify, and Cottonwood cannot read their depositions without violating the experts' intellectual property rights. *See* Fed. R. Civ. P. 45 (Adv. Comm. N. 1991 Am.). Cottonwood properly must retain them for their opinions. Allen, Gardner, and Cunnane may have some "knowledge of facts relevant to the case." *Kaufman*, 539 F.2d at 822. Their

previous depositions and potential testimony seem to fall squarely, however, in the category of opinion testimony.

Cottonwood has not alleged any facts as to the uniqueness of the experts' potential testimony or the reading of their depositions. The Court remains in doubt to their uniqueness given that Patricia Glibert will testify as a retained expert for Cottonwood to nitrogen concentrations as an effective tracer. The same reasoning applies to Cottonwood's ability to "show the unlikelihood that any comparable witness will willingly testify." *Id*. The District also retained Cunnane as an expert for its side. Cunnane can demonstrate at least "that he has been oppressed by having to continually testify." *Id*. These facts all weigh in favor of a conditional denial of Cottonwood's calling of Cunnane, Gardner, and Allen as witnesses. Cottonwood properly should retain and compensate the experts for their testimony at trial regarding their opinions on the matter at issue or to read their previous depositions and reports.

## ORDER

Accordingly, **IT IS HEREBY ORDERED**:

- Cottonwood may not call Edwards as a witness.

13

- Cottonwood may call Gardner, Cunnane, and Allen only if it properly retains them as expert witnesses for their testimony and previous opinions in depositions and compiled reports.

- Cottonwood may call Nagel and Simmons as rebuttal witnesses if Boyne raises the issue that Gallatin Wildlife Association and Montana Rivers are no longer parties in the case.

DATED this 10th day of November, 2025.

_____
Brian Morris, Chief District Judge
United States District Court

14